538 A.2d 329

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1619

v.

PRINCE GEORGE'S COUNTY, Maryland.

No. 980, Sept. Term, 1987.

Court of Special Appeals of Maryland.

March 7, 1988.

---

Jeffrey L. Gibbs (L. Hope O'Keeffe and Bredhoff & Kaiser, on the brief), Washington, D.C., for appellant.

Michael G. Comeau, Associate Co. Atty. (Larnzell Martin, Jr., Co. Atty., Michael O. Connaughton, Deputy Co. Atty. and Russel A. Arlotta, Associate Co. Atty., on the brief), Upper Marlboro, for appellee.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

BISHOP, Judge.

The International Association of Firefighters Local 1619 (IAFF) appeals from an Order of the Circuit Court for Prince George's County which granted the motion for summary judgment filed by appellee Prince George's County, Maryland (the County), and by which an arbitration award was vacated on the ground that the arbitrator had exceeded his authority. The IAFF argues that:

I. The arbitrator acted within his authority.

II.   There exists no alternate basis for vacating the arbitrator's award.

## FACTS

In the early morning of the first day of his scheduled ten-day vacation, Lieutenant Michael D. Kennedy (Kennedy) of the Prince George's County Fire Department (the Department) was arrested for driving while intoxicated and possession of marijuana.[1]  Subsequently, he was discharged from his employment for "unlawful and unprofessional conduct and violation of the public trust".  The basis of the dismissal was Kennedy's violation of General Order 86.01 entitled "Substance Abuse Policy".  This order provides in part:

*Disciplinary Action*

1.   Personnel shall be made aware that the use, possession or distribution of controlled dangerous substances will not be tolerated by the Department.  In addition the abuse of legal drugs, such as alcohol and other over-the-counter drugs which may affect the performance of one's duties shall not be acceptable.

2.   Possession of, or detection through approved testing and/or observed impairment which results from the use of a controlled dangerous substance may result in disciplinary action.  A controlled dangerous substance shall be any substance so defined in the Annotated Code of Maryland, Article 27.

The County Fire Department alleged that by violating General Order 86.01, Kennedy had also violated Art. V, Section 5.1, of the collective bargaining agreement (the Agreement) between IAFF and the County.  That section provides:

---

**1.**  Both charges are misdemeanors under Maryland Law.  *See* MD. ANN.CODE art. 27, § 287 (1957 and 1987 Repl.Vol.) and MD.TRANSP. CODE ANN. § 21–902 (1987 Repl.Vol.) respectively.  Kennedy was ultimately convicted of driving under the influence and served a fifteen day sentence on weekends; the marijuana charge was stet-docketed.

*Compliance with Regulations.* The Union agrees that its members shall comply with all County Fire Department rules and regulations, including those relating to conduct and work performance, unless specifically modified by this Agreement.

After he was notified of the termination of his employment, Kennedy instituted a grievance proceeding in which he disputed his discharge pursuant to Art. XI of the Agreement.[2] In accordance with Art. XI, § 11.3, Step Five of the Agreement, the Union requested arbitration, since Kennedy's grievance had not been resolved under Steps One through Four.[3]

The dispute was heard before arbitrator Herbert Fishgold. Both parties filed post-hearing briefs. In his award, Fishgold concluded that no just cause existed for Kennedy's dismissal and conditionally reinstated him with certain restrictions directly relating to his alcohol and substance abuse problem.[4] The Award also limited Kennedy's back

---

**2.** Article XI sets out a detailed grievance and arbitration procedure. It is undisputed that the parties complied with the requirements of this portion of the Agreement.

**3.** Art. XI, § 11.3 Step Five provides:

If the grievance is not settled at Step Four, the Union may request arbitration, giving written notice to the County Fire Chief within ten (10) days after receipt of the answer at Step Four or within ten (10) days of when the answer was due. The arbitration proceedings shall be conducted by an arbitrator to be selected by the County and the Union from a list supplied by the American Arbitration Association. The parties shall use an alternate strike procedure to select an acceptable name. Normally such list shall be jointly requested within seven (7) days from the date the County is officially notified by the Union of its intent to arbitrate. The decision of the arbitrator shall be final and binding on both parties provided that no provision of this Agreement which is stated to be a matter of policy shall be subject to Arbitration. Expenses for the arbitrator's service and the proceedings shall be borne equally by the County and the Union.

**4.** The conditions were:

1. Grievant shall continue to participate in the Prince George's County Health Department Comprehensive Alcoholism Program to receive individual counseling on a weekly basis. An evaluation

pay, imposed the maximum suspension with an additional 28 day leave without pay, and demoted Kennedy from his position as lieutenant to firefighter.

The County filed a Petition to Vacate the Award. Cross-motions for summary judgment were filed. After a hearing, the court granted the County's petition and vacated the award. The court found that the arbitrator had no authority under the Agreement to fashion a disciplinary remedy different from that determined by the County Fire Depart-

---

should be made in conjunction with this program to determine if grievant should be in a more comprehensive out-patient program. The Department and the Union should also give consideration for the grievant to attend an in-patient rehabilitation program, if necessary, pursuant to the Department's EAP [Employee Assistance Program].

2. Participation in the agreed-upon program shall be for the duration of the program or for a minimum of two calendar years from the date of this Award, whichever is longer. His treatment plan should include, but not be limited to, developing and implementing positive support systems towards an alcohol-free lifestyle, working through grieving issues surrounding the death of his father, and developing positive coping skills to deal with stress.

3. Grievant shall agree to have appropriate reports of his participation as well as all medical information released to the Department's Employee Assistance Program Director for purposes of keeping the Department advised of the grievant's rehabilitation. The grievant shall waive the right to have these reports removed from his personnel file pursuant to Section 16–197 of the [Prince George's County] Code.

4. Grievant will agree to undergo random drug/alcohol testing at the Department's request, under strict verification procedures, including but not limited to, recognized tests such as EMIT and GC/MS. The right to require such tests shall exist for a period of two years from the onset of the after-care treatment program. Thereafter, the Company shall have the right to test the grievant only if cause exists.

5. As part of his rehabilitation treatment, grievant shall continue to attend AA meetings as required by the rehabilitation counsel. Proof of attendance shall be submitted to the Director of the Employee Assistance Program.

6. Any violation of the terms and conditions of the above-described treatment program may form the basis for immediate discharge, for which the grievant may grieve only the issue of unjust application of the terms and conditions.

7. The Department must cooperate in the grievant's efforts to complete rehabilitation. The Department shall not disclose grievant's medical information to non-medical personnel within the Department except as necessary in order to cooperate with the grievant's rehabilitation.

ment.  The court held that in the collective bargaining agreement, the County reserved the right to fashion a proper remedy under its authority to establish "the standards of service offered the public".[5]  From this decision IAFF appeals.

### Standard of Review of Arbitration Award

Because the Agreement between the parties did not expressly provide that the Maryland Uniform Arbitration Act, MD.CTS. & JUD.PROC.CODE ANN. §§ 3-201 through 3-234 (1984 Repl.Vol.) should apply, the common law principles governing review of arbitration awards control the case *sub judice*.[6]  Arbitration is a "favored" action. *Parr Const. Co. v. Pomer*, 217 Md. 539, 543, 144 A.2d 69 (1958); *O'Ferrall v. De Luxe Sign Co.*, 158 Md. 544, 552, 149 A. 290 (1930); *O-S Corp. v. Kroll*, 29 Md.App. 406, 407, 348 A.2d 870 (1975).  Courts generally refuse to review arbitration awards on the merits, reasoning that the parties are required "to submit to the judgment of the tribunal of their own selection and abide by the award".  *Roberts v. Consumers Can. Co.*, 102 Md. 362, 369, 62 A. 585 (1905). "[A]s arbitrations are intended to compose disputes in a simple and inexpensive manner, whenever the parties to one have had a full and fair hearing the award of the arbitrators, will be expounded favorably and every reasonable

---

5.  Article IV, titled MANAGEMENT RIGHTS, provides:

Except as specifically modified or restricted in this agreement, the County reserves the right to determine the standards of service offered the public; to maintain the efficiency of the County's operations; to determine the methods means and personnel by which the County's operations are to be conducted; to direct the work of its employees; to hire, promote, demote, transfer, assign and retain employees in positions; to suspend or discharge employees for just cause; relieve employees from duty because of lack of work; to take any action necessary to carry out the mission of the County.

6.  Unless expressly provided in the agreement, the Maryland Uniform Arbitration Act does not apply to an arbitration agreement between employers and employees or between their respective representatives. *See* Section 3-206(b) of the Act and *Bd. of Educ. v. P.G. Co. Educators' Ass'n.*, 309 Md. 85, 96, 522 A.2d 931 (1987).

intendment made in its support." *Id.* at 368. As the United States Supreme Court has stated:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, —— U.S. ——, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987) (quoting *Steelworkers, supra*, 363 U.S. at 597, 80 S.Ct. at 1361).

■ Based on these general principles is the firmly established common law rule that a court will not ordinarily vacate or refuse to enforce an arbitration award on the basis of "mere errors of law or fact". *Bd. of Educ. v. P.G. Co. Educators' Ass'n.*, 309 Md. 85, 99, 522 A.2d 931 (1987). In *Bd. of Educ.*, the Court said:

> [W]henever the parties to [an arbitration] have had a full and fair hearing the award of the arbitrators, will be expounded favorably and every reasonable intendment made in its support.... In such cases it is conceded that the Court will not look into the merits of the matter and review the findings of law or fact made by the arbitrators nor substitute its opinion or judgment for theirs, but will require the parties to submit to the judgment of the tribunal of their own selection and abide by the award.

*Id.* (quoting *Roberts, supra*, 102 Md. at 368–69, 62 A. 585).

There are certain exceptions which include fraud, misconduct, bias, prejudice, corruption, lack of good faith on the part of the arbitrator, a mistake so gross as to imply bad faith or lack of honest judgment, and where the award is against clear public policy. Also, there may be certain

procedural deficiencies or mistakes which may require a change in the award. *Bd. of Educ., supra,* 309 Md. at 100–01, 522 A.2d 931 and cases cited therein.

## I.

### *The Arbitrator's Authority*

As the trial court stated, the question of the scope of the arbitrators' authority is "pivotal" to the outcome of this case. The court erred, however, when it concluded that the Agreement must grant to the arbitrator, by "express terms", the authority to fashion a proper remedy, and that the absence of such a provision mandated that the arbitrator's award be vacated. Under Maryland law, "when the arbitration agreement is 'clear and precise' ... any controversy arising out of the agreement or breach thereof shall be settled by the arbitration procedure where all issues must be submitted, unless expressly and specifically excluded." *Southern Md. Hosp. v. Edw. M. Crough, Inc.,* 48 Md.App. 401, 406, 427 A.2d 1051 (1981) (footnote omitted). In *Amalgamated Transit Union v. MTA,* 305 Md. 380, 504 A.2d 1132 (1986), the parties agreed, as they did here, that discharge would be for just cause and that the decision of the arbitrator would be final and binding.[7] The Court upheld the power of the arbitrator to determine a remedy, despite the fact that he did not find just cause for discharge and instead fashioned a less severe remedy of suspension without pay. The Court referred to "the broad discretion which an arbitrator has in fashioning a sanction appropriate to the facts as found by the arbitrator." 305 Md. at 390, 504 A.2d 1132. In *Amalgamated,* as here, there was no express provision in the collective bargaining agreement

---

7. The provisions of the Agreement in the case *sub judice* are perhaps a bit broader. Under Article IV of the Agreement, titled "Management Rights", the county has the right "to *suspend or discharge* employees for just cause" (emphasis added). Article XI, Step Five states that "[t]he decision of the arbitrator shall be final and binding on both parties ..."

which authorized the arbitrator to fashion a different reme-
dy. Nonetheless, the Court found that authority implicit in
the agreement, and quoted at length from *Local 543, Int'l.
Union of Elec. Workers v. Otis Elevator Co.*, 314 F.2d 25,
28, *cert. denied*, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705
(1963):

> Having bargained for the decision of the arbitrator on
> the question of whether Calise's conduct and criminal
> conviction constituted "just cause" for discharge, the
> parties are bound by it, even if it be regarded as unwise
> or wrong on the merits; "so far as the arbitrator's
> decision concerns construction of the contract, the courts
> have no business overruling him because their interpreta-
> tion of the contract is different from his." *United Steel-
> workers of America v. Enterprise Wheel & Car Corp*,
> 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 [,
> 1429] (1960). To separate the just causes for discharge
> from the unjust was precisely what the parties clothed
> the arbitrator with the authority to do. If the employer
> wanted the automatic right to discharge an employee for
> violation of certain company rules or for the commission
> of certain crimes, whether on or off the company premis-
> es, it had the opportunity to seek such an explicit exclu-
> sion from the general arbitration clause when the collec-
> tive agreement was negotiated, as it may do when the
> collective agreement expires. In the absence of such a
> clause, the decision of the arbitrator in the present case
> must be taken as conclusively establishing as a matter of
> contract interpretation that the discharge of Calise was
> not for just cause and as foreclosing judicial review of the
> merits of the question.

*Amalgamated*, 309 Md. at 388, 504 A.2d 1132.

The County argues that under the Agreement, the arbi-
trator had authority to determine only whether just cause
existed for the specific sanction it imposed. This very
narrow interpretation of just cause would produce either of

two absurd results. Under the first, the County would be "out of the batter's box" after only one time at bat, if the arbitrator were to find there was no just cause, and it would thereafter be prohibited from imposing any sanction. If the arbitrator were to find just cause, but that the remedy was inappropriate, the County would be up at bat indefinitely until it got a "hit", i.e. imposed a sanction satisfactory to the arbitrator.[8] The absurdity of either of these two results is readily apparent; especially when contrasted with the clear logic of the alternative approach urged by IAFF and supported by case law.

The decisions of the United States Supreme Court also mandate such a result. In *Steelworkers v. Enterprise Wheel, supra,* a group of employees were discharged after they "walked out" on their employer in protest. Pursuant to the terms of the collective bargaining agreement, the issue was submitted to arbitration. The arbitrator concluded that discharge was not justified and that the facts warranted only a suspension of 10 days. 363 U.S. at 595, 80 S.Ct. at 1360. The Supreme Court, in upholding the arbitrator's imposition of a less severe remedy, stated:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.* The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

363 U.S. at 597, 80 S.Ct. at 1361 (emphasis added). Recently, in *United Paperworkers, supra,* —— U.S. ——, 108 S.Ct.

---

8. During oral argument, in response to questions from the Court, the County also took the position that the arbitrator's authority was limited to determine the existence of "just cause" in some abstract or generic sense without reference to the form of discipline imposed by the County.

364, the Court, after it upheld an arbitration award that reinstated an employee who had been involved with marijuana stated, "[n]ormally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct". 108 S.Ct. at 372. The Court then went on to reiterate with emphasis the holding in *Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361, that in formulating remedies, the arbitrator has broad flexibility. Based on the foregoing we reject the narrow interpretation of the Agreement urged by the County.

## II.

### Alternate Basis

■ We agree with IAFF that there are no alternate grounds for vacating the arbitrator's award. The County has made no showing of fraud, misconduct, bias, prejudice, corruption, lack of good faith on the part of the arbitrator, a mistake so gross as to imply bad faith or any of the other bases set out, *supra*, at p. 445. Also, contrary to the County's assertion, we hold that there is nothing in the record to support a conclusion that a public policy has been undermined by the award. In *Amalgamated, supra*, appellant argued that Maryland public policy required the discharge of the driver of a bus who was involved in an accident and who had the odor of alcohol on his breath. The Court acknowledged the public policy exception to enforcement of arbitration awards, citing *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) and *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945), but it rejected the argument on the facts of the case and held that

[t]he public policy which obliges a court to refrain from enforcing a collective bargaining agreement must be "explicit". It "must be well defined and dominant, and is to be ascertained by 'reference to the laws and legal prece-

dents and not from general considerations of supposed public interest' ".

305 Md. at 389, 504 A.2d 1132. Judge Rodowsky, for the *Amalgamated* Court wrote that "[w]hile public policy would require discharge for drunken driving of a public bus, the findings by the arbitrator [that the employee was not operating the bus under the influence of alcohol] preclude treating this case as one of drunken driving". 305 Md. at 381–82, 504 A.2d 1132.

In *United Paperworkers, supra,* it was argued that public policy required the dismissal of an employee who operated hazardous machinery and who was found inside another's car which contained marijuana smoke and a "joint" burning in the ashtray. A later search of the employee's car revealed marijuana "gleanings". The Supreme Court rejected the public policy argument on the basis that no violation of express policy was shown:

> [T]he assumed connection between the marijuana gleanings found in [the employee's] car and [his] actual use of drugs in the work place [was] tenuous at best and provides an insufficient basis for holding that his reinstatement would violate the public policy identified by the [Fifth Circuit] Court of Appeals 'against the operation of dangerous machinery by persons under the influence of drugs or alcohol'.

108 S.Ct. at 374 (citation omitted).

In the case *sub judice,* it has not been shown that any express public policy would be violated by enforcement of the award. In addition, the circumstances present in this case (Kennedy was arrested while on the first day of a scheduled ten-day vacation) are insufficient evidence of abuse of either drugs or alcohol in the work place.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTION THAT THE ARBITRATOR'S AWARD BE CONFIRMED; COSTS TO BE PAID BY APPELLEE.