565 A.2d 693

REGINA CONSTRUCTION CORPORATION

v.

ENVIRMECH CONTRACTING CORPORATION.

No. 298, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 7, 1989.

Daniel J. Blum (Louis Fireison and Louis Fireison & Associates, P.A., on the brief), Bethesda, for appellant.

John B. Stolarz (William T.S. Bricker, on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and GARRITY, JJ.

WILNER, Judge.

The issue before us is whether the Circuit Court for Anne Arundel County erred in concluding that the underlying dispute between the parties was not within the scope of a contractual arbitration clause. We think that it did so err.

Regina Construction Corporation, a Nevada corporation having its principal office in Virginia, was the general contractor on a construction project in Washington, D.C. In June, 1984, Envirmech Contracting Corporation, a Maryland corporation, entered into a Subcontract Agreement with Regina under which Envirmech was to perform certain mechanical and plumbing work on the Washington project.

Paragraph 13 of the Subcontract required that disputes arising out of acts, omissions, or responsibilities of the *owner* be resolved in accordance with the procedures set forth in the Prime Contract. With respect to disputes between Envirmech and Regina, the paragraph provided:

"Disputes solely with Contractor shall be resolved by arbitration in Washington D.C. in accordance with the rules of the American Arbitration Association. Disputes shall not interfere with the progress of the job. Work shall proceed as ordered, subject to claim."

Envirmech "substantially completed" its work on the job in September, 1985. In May, 1988, it filed this action contending, essentially, that (1) prior to entering into the

subcontract, it had informed Regina that it did not have the financial wherewithal to complete the contract without assistance, (2) in order to induce it to enter into the subcontract, Regina "assured and represented that it would financially assist [Envirmech] in the performance of this project," and (3) despite repeated requests, Regina failed to honor that commitment.

The complaint consisted of three counts. Count One charged Regina with fraud—falsely representing, "at the inception and throughout the course of this contract," that Envirmech would be paid its actual costs plus profit and overhead without ever intending to fulfill that promise. Count Two, incorporating by reference the averments of Count One, asserted negligent misrepresentation; Count Three, also incorporating the earlier allegations, charged breach of contract. Compensatory and punitive damages were sought in all three counts.

Regina responded to the Complaint with a Motion to Dismiss. Pointing out the arbitration provision in ¶ 13 of the subcontract, it contended that Envirmech had "failed to take any step to resolve this case by Arbitration, as provided in the contract between the parties" and that the court therefore "does not have any jurisdiction over this case until such time as plaintiff fully complies with the Arbitration provisions of the subcontract...." It asked that the action be dismissed and "for such other and further relief of [*sic*, as] this Court deems just and proper."

Envirmech attacked that motion on both procedural and substantive grounds. Procedurally, it urged that a motion to dismiss was not the appropriate vehicle to raise that defense—that if Regina desired to invoke the arbitration clause, it should have filed a petition to compel arbitration. Substantively, Envirmech contended that the dispute was not arbitrable for three reasons: (1) the Complaint charged that the contract, of which the arbitration clause was a part, was induced by fraud, and only the court could determine that issue; (2) the obligation to arbitrate was not mutual

and therefore was not binding; and (3) the issue of punitive damages was also for the court and not an arbitrator.

Eschewing the notion that discretion, at least in most instances, is the better part of valor, Regina declined to file a petition to compel arbitration and insisted that its motion to dismiss was a proper response to the Complaint. In a memorandum in support of its motion, however, it did urge that the court "has the power to compel arbitration under § 3–207 of the Courts and Judicial Proceedings Article and that compelling arbitration in this case is appropriate...." It asked that the court "either dismiss or stay this action because the arbitration clause in the contract between the parties is valid and broad."

In an order entered January 27, 1989, the court denied Regina's motion to dismiss on the ground that the dispute was not covered by the arbitration clause. Examining the relevant provisions of ¶ 13, the court acknowledged that the general statement that "[d]isputes solely with Contractor" must be arbitrated was broad enough to cover "all" disputes solely with the contractor. But that sentence, it held, was modified by the next two, requiring that disputes not interfere with the progress of the work. Accordingly, the court concluded:

> "Since the work was completed, disputes solely with the Contractor cannot interfere with the progress of work, and therefore, the arbitration provisions are not applicable. The disputes alleged in this complaint are not disputes contemplated by the parties to be resolved by arbitration before resort to the courts."

This appeal by Regina is from that order.

### (1) *Appealability*

■ Before considering whether the court was right or wrong, we need to determine whether the order is even appealable at this point. In a motion to dismiss the appeal, Envirmech insists that the order does not constitute a final judgment within the meaning of Md.Cts. & Jud.Proc.Code Ann. § 12–301. It looks then to § 12–303, providing a right

of appeal from certain interlocutory orders, but concludes that the order at issue here does not fall within the ambit of that section. The closest possibility, it contends, is § 12–303(3)(ix), allowing an immediate appeal from an order granting a petition to stay arbitration pursuant to § 3–208, but that is not what this order did.

Given the procedural posture of the case—Regina's unfortunate insistence on a motion to dismiss rather than a petition to compel arbitration—the question of appealability is not an easy one. To decide it, we need to look first at what law applies.

As we indicated, the subcontract at issue was between a Nevada corporation and a Maryland corporation involving a significant construction project in the District of Columbia. In that circumstance, there can be little doubt that the contract evidences "a transaction involving [interstate] commerce" and therefore falls within the ambit of the Federal Arbitration Act. 9 U.S.C. § 1 (1947). Section 2 of that Act makes valid and enforceable a written provision in any such contract "to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... save upon such grounds as exist at law or in equity for the revocation of any contract."

Sections 3 and 4 of the Act provide the two basic mechanisms for enforcing § 2. Section 3 looks to the kind of situation Regina contends we have here—a pending action involving "an issue referable to arbitration under an agreement in writing for such arbitration." In that circumstance, § 3 provides that, if the court is indeed satisfied that the issue is referable to arbitration, it shall, on application of a party, stay trial of the action "until such arbitration has been had in accordance with the terms of the agreement."

Section 4 deals with the situation in which there is no pending action, but where one party has demanded arbitration of an existing dispute pursuant to a written arbitration

agreement and the other party has refused to arbitrate. It provides a form of specific performance action, authorizing the aggrieved party to petition the U.S. District Court to compel that other party to arbitrate the dispute. If the making of the agreement or the failure to arbitrate pursuant to it is questioned, the court resolves that issue, but, upon a finding that the agreement exists and has not been complied with, the court must order the parties to proceed to arbitration.

Although §§ 3 and 4 of the Federal Act look to the enforcement of the Act through proceedings in Federal court, the United States Supreme Court has made clear that State courts are also bound to recognize and enforce § 2 (when it applies), even to the exclusion of inconsistent State law. *Southland Corp. v. Keating*, 465 U.S. 1, 14–15, 104 S.Ct. 852, 860–861, 79 L.Ed.2d 1 (1984); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). As the *Southland* Court further held, however, while State courts must enforce § 2, they are not bound by the procedural provisions of §§ 3 and 4 of the Federal Act and may generally apply their own procedures. *Id.* at 16 n. 10, 107 S.Ct. at 861 n. 10.

The Maryland arbitration law falls generally into three broad categories—that set forth in the Maryland Uniform Arbitration Act, codified in Md.Cts. & Jud.Proc.Code Ann. title 3, subt. 2, that set forth in other specific statutes, and that which is a matter of State common law. Because the only other specific statute applicable here—the Federal Arbitration Act—does not control the procedural issue before us, we need to look at the Maryland Uniform Act and the State common law.

The Maryland Uniform Act is the State analogue, to the Federal Arbitration Act. Md.Cts. & Jud.Proc.Code Ann. § 3–206(a), the counterpart of § 2 of the Federal Act, makes "a provision in a written contract to submit to arbitration any controversy arising between the parties in the future" valid, enforceable, and irrevocable, "except upon grounds that exist at law or in equity for the revoca-

tion of a contract." Section 3–206(a) has to be read in conjunction with § 3–202, however; that section states that an agreement "providing for arbitration *under the law of the State*" confers jurisdiction "on a court to enforce the agreement and enter judgment on an arbitration award." (Emphasis added.)

Whether the emphasized language in § 3–202 serves to limit application of the Act to agreements specifically referring to Maryland law is not clear but, for purposes of this appeal, is not important.[1] If the Maryland Uniform Act applies, the procedure for enforcing it "shall be in accordance with said act." Md. Rule E1. If the Act does not apply, the procedure for application to a court to enforce an arbitration agreement "shall be as nearly as practicable the same as that provided for such an application in arbitration to which said act applies." Md. Rule E4.

---

**1.** Sections 3–206(a) and 3–202 were derived from former Md.Ann. Code, art. 7, §§ 1 and 16, although the former sections were closer to the language of the Uniform Act as drafted by the National Conference of Commissioners on Uniform State Laws. Art. 7, § 1 had no limiting language about State law in it but, except for collective bargaining agreements, validated and made enforceable any agreement to submit a future controversy to arbitration. The limiting language was in § 16 of art. 7, which provided that "[t]he making of an agreement described in § 1 providing for arbitration *in this State* confers jurisdiction on the court to enforce the agreement under this article and to enter judgment on an award thereunder." (Emphasis added.) The current sections were enacted as part of the recodified Courts and Judicial Proceedings article. As introduced, § 3–202 retained the language from § 16, "in the State"; the phrase "under the law of the State" was substituted during the legislative process. The Revisor's Note to that section noted the change but gave no explanation for it. In one sense, the amendment may have broadened the law by allowing Maryland courts to enforce agreements calling for arbitration in places outside of Maryland, but it raises the question of whether, to be enforceable in a Maryland court, the agreement must in some way make reference to Maryland law. The amendment represents a departure from the language of the Uniform Act and, to our knowledge, has not been construed. *But see* Strausberg, *Confirmation of Out–of–State Arbitration Awards Under Maryland's Uniform Arbitration Act,* 9 U.Balt.L.Rev. 37 (1979); *Stephanie's v. Ultracashmere House, Ltd.,* 98 Ill.App.3d 654, 54 Ill.Dec. 229, 424 N.E.2d 979 (1981).

In a Federal proceeding, the immediate appealability of an order such as that entered here would seem to depend on whether the appellate court construed it as an order denying a stay of a pending proceeding under § 3 of the Federal Act or one denying a petition to compel arbitration under § 4. If regarded as the former, it would not be appealable as a final judgment or as a collateral order but, because the pending action is legal rather than equitable in nature, likely would be appealable as equivalent to the denial of an injunction. If regarded as an order entered under § 4, it would be appealable as a final judgment, for it effectively would dispose of the proceeding in the trial court. *See Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629 (7th Cir.1984); *Langley v. Colonial Leasing Co. of New England*, 707 F.2d 1 (1st Cir.1983); *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

The Maryland Uniform Act has counterparts to §§ 3 and 4 of the Federal Act. Section 3–207 states that if a party to "an arbitration agreement described in § 3–202" refuses to arbitrate, the other party may file a petition with a court to order arbitration. If the court concludes that the agreement exists, it must order arbitration. Section 3–209, the State version of § 3, requires a court to "stay any action or proceeding involving an issue subject to arbitration if ... [a] petition for order to arbitrate has been filed...." As is the case in the Federal system, an order entered under § 3–207 denying a petition to compel arbitration would clearly be appealable as a final judgment. *See Jos. Trionfo & Sons v. E. LaRosa & Sons*, 38 Md.App. 598, 609–10 n. 9, 381 A.2d 727 (1978). A similar kind of order entered under § 3–209 would also seem to be immediately appealable.

In the original enactment of the Maryland Uniform Act, the procedures now set forth in §§ 3–207 and 3–209 were consolidated in one section—§ 2 of art. 7. The initial application to compel arbitration was provided for in § 2(a); the authority to stay a pending proceeding in favor of arbitration was conferred in § 2(c) and (d). Section 18 of art. 7 allowed an appeal to be taken from "[a]n order denying an

application to compel arbitration made under Section 2...."
Such an order could, of course, be entered under either
§ 2(a) or 2(d), and, as § 18 did not discriminate between
them, any order denying an application to compel arbitration would have been appealable. *Cf. Maietta v. Greenfield*, 267 Md. 287, 297 A.2d 244 (1972), distinguishing
between orders *compelling* arbitration, regarded as interlocutory and not immediately appealable, and those denying
an application to compel arbitration.

In enacting the Courts and Judicial Proceedings article,
the General Assembly seemed to accept the notion that an
order denying a petition or application to compel arbitration
was immediately appealable, and indeed appeared to believe
that it was appealable as a final judgment. Its only concern
as to the appealability of orders entered under § 18 of art. 7
had to do with orders entered under § 2(b) actually *staying*
arbitration. It therefore added to the list of orders from
which an *interlocutory* appeal could be taken one "granting an application to stay arbitration pursuant to § 3–207 of
this [Courts and Judicial Proceedings] article." 1973 Md.
Laws (Spec.Sess.) ch. 2, § 12–303(c)(9); Cts. & Jud.Proc.
art., § 12–303(3)(ix). The Revisor's Note following
§ 12–303 explains:

> "In addition, paragraph (9) picks up a provision of Art. 7,
> § 18. Sec. 18 deals with appeals with respect to arbitration and award. *Most of its language deals with appeals
> from final judgments and is thus covered by § 12–301.*
> The particular provision contained in paragraph (9) might
> authorize an appeal from an interlocutory judgment, and
> thus is included here. Art. 7, § 18 is proposed for repeal;
> see *Maietta v. Greenfield*, 267 Md. 287, 297 A.2d 244
> (1972)."

(Emphasis added.)

We dealt very cursorily with this issue, in *dicta*, in *Jos.
Trionfo & Sons v. E. LaRosa & Sons, supra,* 38 Md.App.
598, 381 A.2d 727. There, as here, a defendant in an action
in court attempted to invoke an arbitration agreement
through a motion to dismiss, which was denied. In the

appeal, we expressed the view that the statutory procedure for raising that defense was intended as "an exclusive method for obtaining an order to compel arbitration, and that the issue of arbitration should *not* be asserted in a motion raising preliminary objection...." *Id.* at 609, 381 A.2d 727. At that time, Maryland had not yet merged its law and equity procedure, and we observed that, under § 3–201(b), a petition to compel arbitration had to be filed in an equity court. In that light, we stated, at 609–10, 381 A.2d 727:

> "Appellant's error was of some consequence, as it tended to thwart what we regard as an implied purpose of the Uniform Act, permitting an appeal from a final order of an equity court denying an application to compel arbitration. In resorting to a motion raising preliminary objection, appellant precluded itself from obtaining a pretrial appellate determination as to the existence of the arbitration agreement, since the court's denial of the motion was interlocutory in nature and not a final order under Md. Cts. & Jud.Proc.Code Ann. § 12–301 (1974)."

With the adoption of the revised Maryland Rules in 1984, the distinctions between law and equity procedure were abolished. There is now but one form of action in the circuit courts. *See* Md. Rule 2–301 and Committee Note thereto. The distinction found important in *Trionfo*, therefore, no longer exists.

That is not to say that a motion to dismiss under Md. Rule 2–322 is the proper way in which to invoke an arbitration agreement. It is not, and, had the court denied the motion solely on that ground with leave to file a proper motion to compel arbitration, we would have regarded the order as interlocutory and non-appealable. But that is not what happened here. In the motion, as supplemented in the supporting memorandum, Regina asked the court to stay the proceeding and compel arbitration. The question of whether the underlying dispute was arbitrable therefore was clearly before the court. More importantly, the sole basis of the denial of the motion was the court's conclusion

that the dispute was not arbitrable—that it did not fall within the ambit of the arbitration agreement. Its order, then, was in every sense the functional equivalent of an order denying a motion to compel arbitration. Whether, in light of the legislative history noted above, we regard it as a final judgment or, notwithstanding the contrary Federal view, as a collateral order having the attributes noted in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 394 A.2d 801 (1978) is of no consequence here, for in either event it is appealable.

### (2) *The Merits*

As we observed, Envirmech raised three substantive defenses to Regina's demand for arbitration—that the contract was procured by fraud, that the obligation to arbitrate was not mutual and therefore was not binding, and that an arbitrator had no authority to award punitive damages. The court's decision, however, rested on none of those defenses, but instead was based on the conclusion that only claims made while Envirmech was still on the job were subject to the arbitration agreement. We shall start with the court's reasoning.

Although courts initially had significant qualms about specifically enforcing executory agreements to arbitrate disputes, those qualms no longer exist. Under both Federal and Maryland law, arbitration is now regarded as a preferred means of conflict resolution. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), *reh. denied* 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987); *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 468 A.2d 91 (1983); *Bd. of Educ. v. P.G. Co. Educators' Ass'n*, 309 Md. 85, 522 A.2d 931 (1987). Even apart from the Uniform Act and other arbitration statutes, agreements to arbitrate future disputes are valid and enforceable under Maryland common law. *Anne Arundel County v. Fraternal Order*, 313 Md. 98, 543 A.2d 841 (1988).

It is true, of course, that absent some statutory compulsion not present here, arbitration is a matter of contract, and a party cannot be compelled to arbitrate that which it never agreed to arbitrate. *Messersmith, Inc. v. Barclay Townhouse,* 313 Md. 652, 547 A.2d 1048 (1988). But often, as here, that just begs the question, which necessarily focuses on the scope and language of the arbitration agreement. In that regard, Maryland has adopted the general rule that "[w]here there is a broad arbitration clause, calling for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded." *Gold Coast Mall v. Larmar Corp., supra,* 298 Md. 96, 104, 468 A.2d 91.

■ We have considerable difficulty understanding the Circuit Court's reasoning in this case. The agreement to arbitrate was indeed very broad; it covers "[d]isputes solely with Contractor" and, articulating no exceptions, obviously includes *all* disputes solely with the contractor. The additional provision that disputes shall not interfere with the progress of the work is not a limitation on what must be arbitrated but simply a commonsense requirement that the work continue while the claim is being arbitrated. The final sentence of the paragraph—that the work shall proceed "subject to claim"—makes that clear beyond cavil.

To construe that language as limiting the arbitration agreement to claims arising prior to completion of the work would not only be an undue constriction of the language but would significantly impair the value of the arbitration agreement itself. It is not at all uncommon in construction projects for claims to arise after the work is complete; arguments over change orders, the quality and quantity of the work done, other set-offs, and conformance with specifications or other contract documents and terms often erupt after the job is done. Under the view of the Circuit Court, those disputes too would be excluded from arbitration. We find no warrant for that approach.

We turn now, and may quickly dispose of, Envirmech's other arguments. The principal defense raised below—that the claim of fraud in the inducement of the contract could only be adjudicated by a court—has been abandoned; no mention of it is made in Envirmech's brief. It is completely without merit in any event. The claim here is that the entire subcontract, and not just the arbitration clause, was induced by fraud or negligent misrepresentation; that is an issue to be determined in the first instance by the arbitrator, not the court. *See Prima Paint v. Flood & Conklin*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Southland Corp. v. Keating, supra*, 465 U.S. 1, 104 S.Ct. 852. *See also Peoples Sec. Life Ins. v. Monumental Life Ins.*, 867 F.2d 809 (4th Cir.1989), construing the Federal Act; *Nelley v. Baltimore City*, 224 Md. 1, 166 A.2d 234 (1960), applying Maryland common law.

The contention that the arbitration agreement lacks mutuality is based on selective passages from other provisions of the subcontract which give Regina certain rights in the event of various defaults by Envirmech. Envirmech sees in those provisions some right by Regina, but not by Envirmech, to proceed directly to court. We think Envirmech has misconstrued those provisions; they may give substantive rights, but if there is any dispute over their application, the dispute must be resolved by arbitration. There is no lack of mutuality.

■ Finally, we reject as wholly unfounded the notion that Envirmech can defeat arbitration simply by claiming punitive damages. In the first place, unless the arbitration agreement precludes it, we see no reason why, in an appropriate case, an arbitrator cannot award punitive damages. *See Willoughby Roofing & Supply v. Kajima Intern.*, 598 F.Supp. 353 (N.D.Ala.1984), *aff'd* 776 F.2d 269 (11th Cir. 1985); *Grissom v. Greener & Sumner Const., Inc.*, 676 S.W.2d 709 (Tex.App.1984). Arbitrators generally are accorded a fair amount of discretion in fashioning remedies and sanctions. *International Firefighters v. PG County*, 74 Md.App. 438, 538 A.2d 329 (1988). Moreover, if, in this

instance, punitive damages are not recoverable in arbitration—a question we need not decide here—Envirmech has waived its right to them by agreeing to arbitrate all disputes with the contractor.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR ENTRY OF APPROPRIATE ORDER DIRECTING ARBITRATION; APPELLEE TO PAY THE COSTS.