NOS COMMUNICATIONS, INC., Plaintiff,

v.

Brian ROBERTSON and Colorado Communications Network, Inc., Defendants.

Civil Action No. 96–K–1465.

United States District Court, D. Colorado.

Sept. 4, 1996.

Boyd N. Boland, Holme, Roberts & Owen, L.L.C., Denver, CO, John M. Genga, Troop Meisinger Steuber, Los Angeles, CA, for Plaintiff.

Michael D. Murphy, Michael L. Glaser, Haligman & Lottner, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

On June 14, 1996, NOS Communications, Inc., a Maryland corporation filed a complaint against Brian Robertson and Colorado Communications Network, Inc. ("CNC"), a Colorado corporation. The complaint alleges causes of action for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with existing contracts, tortious interference with prospective contractual relations, and unfair competition. NOS seeks damages, injunctive relief, costs of suit, and exemplary damages.

Jurisdiction exists under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $50,000.

Pending are NOS' Motion to Stay Action Pending Arbitration and Defendants' Petition to Stay Arbitration. Having reviewed the briefs and the record on file, I have determined that oral argument would not materially assist me in ruling on these motions. I grant NOS' motion and deny Defendants' petition.

*Background.*

In response to the complaint, Defendants filed an Answer, Counterclaim and Jury Demand on June 24, 1996.

On July 2, 1996, I issued a preliminary injunction ordering that, pending determination of an award by the arbitration panel on the issue of preserving the status quo, or for a period not to exceed two years beyond the date of June 15, 1996, whichever first occurs, Defendants Brian Robertson and Colorado Communications Network, Inc. were enjoined from the following:

(1) Soliciting away from NOS the current subscribers of its long distance telecommunications services;

(2) Using NOS' confidential and proprietary customer, business development and training information, techniques and materials in any way in any long distance telecommunications business in which Defendants may be involved;

(3) Disclosing NOS' confidential and proprietary customer, business development and training information, techniques and materials to any person or entity involved in a long distance telecommunications business;

(4) Retaining any of NOS' confidential and proprietary customer, business development and training information, techniques and materials in any written, electronic or other tangible form; and

(5) Failing to return to NOS, or to destroy, any of NOS' confidential and proprietary customer, business development and training information, techniques and materials in any written, electronic or other tangible form.

On July 10, 1996, NOS filed a Motion for Enlargement of Time Pending Determination of Motion to Stay. NOS stated its intention to file a Motion to Stay Action Pending Arbi-

tration and requested an extension of time to respond to the counterclaim pending determination of its motion its stay.

On July 11, 1996, I granted NOS' motion for enlargement of time until ten days after I rule on its motion to stay.

On July 18, 1996, Defendants filed a Notice of Appeal to the Tenth Circuit Court of Appeals from all aspects of the July 2, 1996 Memorandum Opinion and Preliminary Injunction.

On July 23, 1996 Defendants filed an Amended Answer, Counterclaim and Jury Demand. On July 28, 1996 they filed an Amended Counterclaim and Jury Demand, including claims for breach of contract, promissory estoppel, common law fraud, negligent misrepresentation, breach of fiduciary duty, violation of the Colorado Deceptive Trade Practices Act, action for accounting, tortious interference with business relationship, unfair competition, misappropriation of trade secrets, declaratory judgment, preliminary injunction, trade defamation and exemplary damages.

On July 24, 1996, NOS filed a Motion to Stay Action Pending Arbitration. On August 12, 1996, Defendants filed a response to the motion.

Also on August 12, 1996, Defendants filed a Petition to Stay Arbitration pursuant to the Maryland Arbitration Act § 3–208.

I granted the parties' respective requests to file a reply and surreply in respect of the Motion to Stay Action Pending Arbitration.

On August 23, 1996 NOS filed a Combined Reply Memorandum in Further Support of Motion to Stay Action Pending Arbitration and Opposition to Defendants' Motion to Stay Arbitration.

On August 30, 1996, Defendant's [sic] Surreply to NOS' Reply in Support of its Motion to Stay Action Pending Arbitration was filed.

### Motion to Stay Action Pending Arbitration.

In its motion, NOS notes I have already enforced the provisions of the June 15, 1993 contract ("Contract") between itself and Brian Robertson on behalf of CNC when I issued the July 2, 1996 Memorandum Opinion and Preliminary Injunction ("Order"). I recognized the Contract provides "any controversy or claim arising out of or relating to this Agreement.... is to be settled in accordance with the rules of the American Arbitration Association." (Order at 7.)

NOS states all claims and counterclaims in this action arise from or relate to the parties' relationship under the Contract and thus properly belong before the American Arbitration Association. "[A]rbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage." *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 13 F.3d 330, 332 (10th Cir.1993). It notes the Order clearly envisaged the case going to arbitration in that it enjoined Defendants from certain actions "pending determination of an award by the arbitration panel...." (Order at 18.)

The Order also acknowledged the applicability of the Arbitration Act to the Contract. (Order at 10.) That act pertinently provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C. § 3.

NOS asserts, once it is determined that the dispute falls within the scope of the arbitration agreement, I must stay proceedings and compel arbitration. *See Houlihan v. Offerman & Co.,* 31 F.3d 692, 695 (8th Cir.1994).

It argues the arbitration clause is broad in that it requires arbitration of "any controversy or claim arising out of or relating to" the Contract and the fact that the claims or counterclaims sound in contract or tort is immaterial to arbitrability. *See Maldonado*

v. *PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir.1975).

Finally, NOS asserts, even if I find some of the disputes are not arbitrable, I have inherent authority to control my docket and to stay litigation of nonarbitrable claims while the remainder of the controversy is being arbitrated. *See M & I Elec. Indus., Inc. v. Rapistan Demag Corp.*, 814 F.Supp. 545, 547 (E.D.Tex.1993).

In response, Defendants assert NOS has waived its right to arbitrate this dispute because Maryland law and the Maryland Arbitration Act apply as opposed to the Federal Arbitration Act. They maintain the Federal Arbitration Act does not apply here because the Contract contains a choice of law provision mandating adherence to Maryland Law. Under that law, according to Defendants, NOS waived its right to arbitrate this dispute when, instead of filing for arbitration, it filed its complaint in this court, seeking, *inter alia*, permanent injunctive relief and actual and punitive damages, alleging claims for (a) breach of contract, (b) breach of fiduciary duty, (c) misappropriation of trade secrets, (d) tortious interference with existing contract, (e) tortious interference with prospective contractual relations, and (f) unfair competition.

They also oppose the stay of the action because of their pending appeal to the Tenth Circuit of my decision, *inter alia*, that the June 15, 1993 Agreement ("Contract") containing the arbitration clause was not superseded by the May 24, 1994 agreement which does not contain such clause. Defendants state, under Maryland law, a court must decide whether an arbitration agreement exists, a decision ordering arbitration is an appealable order, and an appellant may file a petition to stay arbitration.

Simultaneously with the filing of their response, Defendants filed a Petition to Stay Arbitration pursuant to the Maryland Arbitration Act § 3–208.

### Discussion.

The Contract pertinently provides:

Settlement of Disputes. In the event of any controversy or claim arising from or relating to this Agreement, or the making, performance or interpretation of it the parties initially, in good faith, will attempt to resolve the dispute among themselves. If the parties are unable to resolve their dispute privately, the matter is to be settled in accordance with the rules of the American Arbitration Association.... A judgment upon the arbitration award may be entered in any court having jurisdiction over the subject matter of the claim or controversy.

(Mot. T.R.O. with Authority, Ex. 5, ¶ 3.8.) It also provides:

Construction and Governing Law. This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and interpreted in accordance with the laws of the State of Maryland.

(*Id.* ¶ 3.15.)

■ Defendants assert where parties have chosen to arbitrate according to state law, the chosen state law and not the Federal Arbitration Act applies. They cite *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In *Volt*, the relevant construction contract contained an agreement to arbitrate all disputes arising out of the contract and a choice-of-law clause providing that the contract would be governed by the law of "the place where the Project is located." *Id.* at 470, 109 S.Ct. at 1251. When a dispute arose under the contract, Volt made a formal demand for arbitration. In response, Stanford filed an action against Volt in the California Superior Court alleging fraud and breach of contract. In the same action, Stanford sought indemnity from two other parties involved in the construction project, with whom it did not have arbitration agreements. The trial court denied Volt's motion to compel arbitration and granted Stanford's motion to stay arbitration under California Civil Procedure Code Annotated § 1281.2(c) (West 1982) which allows such a stay pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it, "where there is a possibility of conflicting rulings on a common issue of law

or fact." *Volt*, 489 U.S. at 471, 109 S.Ct. at 1251.

The State Court of Appeal affirmed, holding (1) by specifying that the contract would be governed by "the law of the place where the Project is located," the choice-of-law clause incorporated the California rules of arbitration, including § 1281.2(c), into the arbitration agreement, and (2) application of § 1281.2(c) was not preempted by the Federal Arbitration Act, even though the contract involved interstate commerce. The Supreme Court affirmed.

Defendants rely on the statement in *Volt* that "§ 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties']* agreement.'" 489 U.S. at 474–75, 109 S.Ct. at 1253 (citing 9 U.S.C. § 4) (emphasis added).

Defendants argue here, as in *Volt*, the parties expressly agreed to, and contracted for Maryland law to control all aspects of the Contract, including arbitration. Accordingly, they maintain, under the Contract, the Maryland Arbitration Act § 3–201 *et seq.* and Maryland case law must govern the disposition of NOS' motion.

NOS replies the Supreme Court in *Volt* determined the application of a specific state arbitration statute was not preempted by the Federal Arbitration Act where the parties' agreement to have their dispute governed by state law did not undermine the federal policy of favoring arbitration. *See Volt*, 489 U.S. at 478–79, 109 S.Ct. at 1255–56.

NOS points out in *Volt*, the state statute at issue provided for a stay of arbitration pending litigation of a related dispute between one of the parties, Stanford, and a stranger to the arbitration agreement who could not be compelled to arbitrate. Volt, the other party to the arbitration contract, was merely delayed in, but not deprived of, its right to arbitrate. NOS asserts the subject case is distinguishable because Defendants seek to divest it forever of the ability to arbitrate this matter, a result undercutting the federal policy favoring arbitration. It maintains, to give due regard to such policy, I should decide under federal law whether NOS waived its right to arbitrate.[1]

 I agree. If, in applying Maryland law as Defendants argue, one were to conclude that by filing a complaint in this court and seeking preliminary injunctive relief in this court, NOS waived its right to arbitration, the effect would be to undermine the federal policy of favoring arbitration. I am not, however, persuaded that Maryland Law would produce the result urged by Defendants.

Defendants rely on *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 450 A.2d 1304 (1982). As the Maryland Court of Appeals stated in that case: "The initial question here is whether the contractor, by participating in a judicial proceeding that resulted in a final judgment on an issue arbitrable under its contract with the owner, has waived the right subsequently to arbitrate unrelated issues arising under the contract." *Id.* at 447, 450 A.2d 1304.

Unlike in *Charles J. Frank*, here, NOS has not participated in a judicial proceeding that resulted in a final judgment. To the contrary, NOS filed a complaint in this court on June 14, 1996, followed on June 17, 1996 by a motion for a temporary restraining order. In that motion, NOS stated: "To the extent based on the Contract, this dispute is subject to arbitration. Contract § 3.8, Ex. 5 at pp. 5–6. Nevertheless, NOS remains entitled to the emergency injunctive relief sought hereby." (Mot. T.R.O. with Authority at 6.)

As the Maryland court stated in *Charles J. Frank, Inc.*:

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied upon as constituting

---

1. Later cases have held that the decision in *Volt* is restricted to its facts. *See Ideal Unlimited Services Corp. v. Swift–Eckrich, Inc.*, 727 F.Supp. 75, 78 n. 4 (D.P.R.1989); *Marchetto v. DeKalb Genetics Corp.*, 711 F.Supp. 936, 940 (N.D.Ill. 1989); *Silver Dollar City, Inc. v. Kitsmiller Constr. Co.*, 874 S.W.2d 526, 536 (Mo.App.S.D. 1994).

a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions."

*Charles J. Frank, Inc.,* 450 A.2d at 1306–7 (quoting *BarGale Indus., Inc. v. Robert Realty Co.,* 275 Md. 638, 343 A.2d 529, 533 (1975)).

Further, "[t]he intention to waive must be clearly established and will not be inferred from equivocal acts or language. . . . whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case." *Id.,* 450 A.2d at 1307.

Defendants' argument that NOS' unequivocal intention to waive its right to arbitrate can be inferred from its filing of the complaint and motion for temporary injunctive relief in this court is unpersuasive. None of the Maryland cases cited stand for such proposition. Defendants' extensive reference to *WorldSource Coil Coating, Inc. v. McGraw Constr. Co.,* 946 F.2d 473 (6th Cir. 1991), a case concerning Illinois law, is unhelpful.

Of significance are the comments of the Court of Appeals of Maryland in *Holmes v. Coverall North America, Inc.:*

> The Maryland Arbitration Act has been called the "State analogue ... to the Federal Arbitration Act." The same policy favoring enforcement of arbitration agreements is present in both our own and the federal acts. . . . We therefore rely on decisions interpreting the Federal Arbitration Act in reaching our decision.

336 Md. 534, 649 A.2d 365, 368 (1994) (quoting *Regina Constr. Corp. v. Envirmech Contracting Corp.,* 80 Md.App. 662, 565 A.2d 693, 696 (1989)).[2]

As I have already noted, various circuit courts of appeals, including the Tenth Circuit, recognize "their issuance of injunctive relief to preserve the status quo pending arbitration is often necessary and, in circumstances analogous to these, have found it fully consistent with and appropriate under the [Federal Arbitration] Act." (Order at

10) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,* 844 F.2d 726, 728 (10th Cir.1988) and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1052 (4th Cir.1985)).

■ I also reject Defendants' request that the motion to stay this action be denied because of their pending appeal to the Tenth Circuit of my decision, *inter alia,* that the Contract containing the arbitration clause was not superseded by the May 24, 1994 agreement which does not contain such clause. The fact that Defendants appeal is totally irrelevant to my consideration of the merits, *vel non,* of this motion.

I therefore grant NOS' Motion to Stay Action Pending Arbitration.

*Defendants' Petition to Stay Arbitration.*

■ Defendants request I stay this arbitration pursuant to the Maryland Arbitration Act § 3–208 which provides:

> (a) Petition to stay.—If a party denies the existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.
>
> (b) Filing of a petition.—(1) A petition to stay arbitration shall be filed with the court where a petition to order arbitration has been filed.

Maryland Arbitration Code § 3–208 (1974), 1989 Repl.Vol.)

I have already ruled that the arbitration agreement exists. Pending a decision of the court of appeals, my decision stands. I therefore deny Defendants' petition.

*Conclusion.*

For the aforesaid reasons I grant NOS' Motion to Stay Action Pending Arbitration and deny Defendants' Petition to Stay Arbitration. This action is stayed. Plaintiff shall file the Arbitration Award within ten days of its issuance. Pursuant to D.C.Colo. LR

---

2. In ruling that the plaintiff's fraudulent inducement claim should be arbitrated, the court stated where (as here), "there is a broad arbitration clause, even when the issue of arbitration of the particular dispute is unclear, 'the court should promote the legislative policy favoring arbitra-

tion and leave the issue of arbitrability to the arbitrators.' " *Holmes v. Coverall North America, Inc.,* 649 A.2d 365, 370 (1994) (quoting *Crown Oil & Wax Co. v. Glen Constr. Co.,* 320 Md. 546, 578 A.2d 1184, 1190 (1990)).

41.1A, this case is deemed, for administrative purposes, to be closed. Accordingly,

IT IS ORDERED THAT the Motion to Stay Action Pending Arbitration, with Local Rule 7.1(A) Certification is GRANTED;

IT IS FURTHER ORDERED THAT the Petition to Stay Arbitration is DENIED;

IT IS FURTHER ORDERED THAT this action is STAYED;

IT IS FURTHER ORDERED THAT Plaintiff NOS Communications, Inc. shall file the Arbitration Award within ten days of its issuance;

IT IS FURTHER ORDERED THAT, pursuant to D.C.Colo. LR 41.1A, this case is deemed ADMINISTRATIVELY CLOSED.

Dated this 4th day of September, 1996 at Denver, Colorado.