# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3300

_____

| | | |
|---|---|---|
| Richard S. Bond, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Twin Cities Carpenters Pension | * | |
| Fund, sued as Twin City Carpenters | * | |
| and Joiners Pension Fund, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 12, 2002

Filed: October 8, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY and MURPHY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Richard S. Bond brought an action against Twin City Carpenters Pension Fund (Twin Cities Carpenters) for reimbursement of costs associated with the determination of his eligibility for benefits. He claims Twin City Carpenters' procedures for determining his eligibility for pension benefits violate the Employment Retirement Income Security Act (ERISA). The district court granted summary judgment in favor of Twin City Carpenters. We reverse.

# BACKGROUND

Bond is a retired union carpenter. He is a participant in the Twin City Carpenters and Joiners Pension Fund (the Plan). Sometime after Bond retired, the Plan was amended to limit the work a retiree could do while still receiving benefits. Because Bond had been supplementing his pension with carpentry work, he sought a determination of whether the Plan's amendments applied to him.

The Plan required its participants to first seek a benefits determination through the Plan's Board of Trustees (the Board). If not satisfied with the Board's determination, the participant's sole remedy is to submit the claim to binding arbitration. The Plan directs the participants to bear half of the costs of arbitration, unless the arbitrator alters this presumption in the arbitrator's decision.

The Board found that Bond was indeed covered by the Plan's recent amendments. Unhappy with this determination, Bond sought further review by submitting his claim to binding arbitration. The arbitrator affirmed the Board's decision, and assessed costs and fees equally between the parties. Bond paid his share of the costs[1], and then filed an action in district court seeking reimbursement. He argued that while the arbitrator's decision to split the costs of arbitration was consistent with the Plan, the Plan itself violates ERISA because its mandatory arbitration clause and its fee-splitting presumption together do not provide him a reasonable opportunity for full and fair review, as required by 29 U.S.C. § 1133. We agree.

---

[1]There is some question as to whether Bond in fact paid half of the costs, or whether the arbitrator accepted a lesser amount in lieu of full payment. At any rate, the arbitrator's award required both sides to pay half the costs; any discount subsequently granted to Bond is irrelevant.

## DISCUSSION

Before reaching the issue of whether Bond was denied a reasonable opportunity for a full and fair review, we must first consider whether § 1133 and its regulations apply to Bond's case.

Section 1133 itself purports to govern decisions of Plan fiduciaries, but its accompanying regulations inform that it also governs appeals arising from that fiduciary decision. 29 C.F.R. § 2560.503-1(a) (1999) (stating scope of this section encompasses review of claim denials). Recent amendments to the regulations confirm that § 1133 is meant to apply to all claims procedures, including appeals from adverse determinations. 29 C.F.R. §§ 2560.503-1(b), 2560.503-1(b)(3) (2001).

This reading is consistent with the United States Department of Labor's interpretation of ERISA, articulated in an opinion letter in which the Department of Labor concluded that a Plan's appellate procedures, particularly arbitration, are still within the purview of § 1133. Because the Department of Labor's interpretation is consistent with § 1133, we decline to disturb it. See Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837, 843 (1984) (noting judicial re-interpretation of a statute should be reserved for circumstances where administrative interpretation is "contrary to clear congressional intent.") Accordingly, we hold that § 1133 and its regulations apply not only to fiduciary decisions, but also to appeals from fiduciary determinations.

Finding that Bond's plan is controlled by § 1133 and its regulations, we turn now to the substance of Bond's claim. Under ERISA, a plan must provide participants a reasonable opportunity for a full and fair review of benefits determinations. 29 U.S.C. § 1133. A review procedure violates ERISA if it "unduly inhibits or hampers the initiation or processing of plan claims." 29 C.F.R. § 2560.503-1(b)(1)(iii) (1999). The question, then, is whether a mandatory arbitration

scheme with presumptive cost-splitting unduly inhibits or hampers the processing of claims.

We are guided in our analysis again by the Department of Labor's interpretation of this issue. In its opinion letter, the Department of Labor advises that when a plan requires participants to submit to arbitration, cost-splitting "contravenes the reasonableness standard set forth in section 2560.503-1(b)." (Appellant's Add. at 9-10.). This interpretation is not "contrary to clear congressional intent." Chevron, 467 U.S. at 843. An independent review of the regulations at issue leads us to the same conclusion. Bond's case is controlled by the regulations in effect in 1999, when he filed his claim. These regulations are not a model of clarity, but they unequivocally prohibit plans from using procedures that hinder the processing of claims. 29 C.F.R. § 2560.503-1(b)(1)(iii) (1999). Under the ERISA plan in Bond's case, if a Plan participant wants to appeal an adverse board determination, they are faced with the presumption that they will have to shoulder half of the costs of arbitration. The threat of having to pay the arbitrator's expenses no doubt discourages the pursuit of many legitimate claims by those who cannot afford such costs. A claims system such as this is unduly burdensome, and not permitted by ERISA.[2]

ERISA does not require a claimant participating in a covered plan to use arbitration as part of the plan's appellate process. However, when a plan such as the one here provides for mandatory arbitration before allowing a claimant to initiate a civil action, it may not carry a presumption of cost-splitting. To hold otherwise would permit a plan to limit claims by merely adding an expensive appellate process

---

[2]Recent amendments to the regulations clarified this issue, and confirmed that "a provision or practice that requires payment of a fee or costs as a condition to making a claim or appealing an adverse benefit determination would be considered to unduly inhibit the initiation and processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3) (2001).

to its claims procedure before allowing a claimant to initiate a civil action. Such a scheme subverts the intent of ERISA's claim provisions, as well as the regulations' mandate that the plan not unduly inhibit or hinder the processing for claims.

## CONCLUSION

The plan in this case unduly inhibits the pursuit of ERISA claims, and is thus not in accord with ERISA's statutory and regulatory framework. We reverse the district court, and remand with instructions to require Twin Cities Carpenters pay Bond's share of the arbitration costs.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

When Twin City Carpenters Pension Fund suspended Richard Bond's benefits because of the number of hours that he was working, Mr. Bond requested that the plan's board of trustees review the fund's determination. The board approved the suspension. Mr. Bond then pursued arbitration of his claim, as the plan required as a pre-requisite to filing a civil action; the arbitrator affirmed the board's decision and decided that Mr. Bond was responsible for half the arbitration costs. After Mr. Bond paid that amount, he filed the present action seeking reimbursement of the payment, claiming that the provision in the pension plan providing for sharing arbitration costs was illegal under §503 of the Employment Retirement Income Security Act (ERISA) (29 U.S.C. § 1133). The district court ruled that the challenged provision did not violate ERISA, and Mr. Bond appealed. For the reasons that follow, I would affirm the judgment of the district court.

## I.

I begin by examining the ERISA provision under which Mr. Bond seeks relief. Section 1133 requires, in relevant part, that employee benefit plans provide participants whose claims are denied with a procedure that affords "a reasonable

-5-

opportunity" for "a full and fair review by the appropriate named fiduciary of the decision denying the claim."

There is no dispute that Mr. Bond's pension plan qualifies as an employee benefit plan under §1133. The question is whether the plan's arbitration provisions creating a presumption that arbitration costs should be shared by the parties and granting an arbitrator discretion in dividing those costs, violate this statute. I believe that § 1133 simply does not govern these plan provisions because it does not purport to deal with proceedings that occur after a review by the fiduciary. *Cf. Graphic Comm. Union v. GCIU-Employer Ret. Benefit Plan*, 917 F.2d 1184, 1189 (9th Cir. 1990); *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000). The statute requires only that a participant whose claim for benefits has been initially denied by the plan have an opportunity for a "full and fair review" by the plan's named fiduciary. In this case, Mr. Bond does not contest the fact that the plan's named fiduciary (namely, the board) provided him with a "full and fair review," and so I believe that the statute has been fully satisfied.

Mr. Bond relies on an opinion letter issued by the United States Department of Labor to support his position that the plan's arbitration provisions violated § 1133. The letter states that "a plan that required that a participant bear an equal share of the expenses" of arbitration when such arbitration is a pre-requisite to "initiating a civil action" violates 29 C.F.R. § 2560.503-1(b) (1999). Section 2560.503-1(b) in turn provides that a plan's claims procedures must be "reasonable," and 29 C.F.R. § 2560.503-1(b)(1)(iii) (1999), which presumably is the subsection that the opinion letter's author believes would be violated, states that an employee benefit plan cannot have any procedure that "unduly inhibits or hampers the initiation or processing of plan claims."

I recognize that an agency's interpretation of its own regulation is controlling unless it is "plainly erroneous or inconsistent with the regulation," *Bowles v. Seminole*

*Rock & Sand Co.*, 325 U.S. 410, 414 (1945), or exceeds the limits of the statute to which the regulation applies, *see Auer v. Robbins*, 519 U.S. 452, 463 (1997). I further recognize that an agency's regulations themselves are entitled to deference, and that the relevant question is not how a court would interpret a statute, but whether an agency's interpretation of a statute is reasonable. *See Chevron U.S.A. Inc., v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Nonetheless, courts are the final authorities on issues of statutory construction. *See id* at 843 n.9. They are "not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem  inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *NLRB v. Brown*, 380 U.S. 278, 291 (1965).

I am clear that § 2560.503-1(b)(iii) (1999) is itself consistent with ERISA because I believe that that regulation means merely to provide that a plan cannot adopt any procedure that "unduly inhibits or hampers" participants from obtaining review from a named fiduciary after a claim has been initially rejected. I agree with the Department of Labor that any such procedure would deny participants "a reasonable opportunity" for the "full and fair review by the appropriate named fiduciary" required by § 1133. For instance, a plan that required participants to pay an excessive fee before they could obtain review of a rejected claim from a plan's named fiduciary would violate the terms of this regulation. What I reject as entirely unreasonable is the opinion letter's assertion that any plan that requires arbitration as a pre-requisite to initiating a civil action and that requires employees to bear an equal share of arbitration expenses violates § 2560.503-1(b)(iii). For reasons that I have already stated, I do not believe that ERISA has anything at all to say about cost-sharing arrangements for arbitration that is a pre-requisite for filing a civil action.

Perhaps if arbitration imposes costs on a beneficiary that make it prohibitive for him or her to " 'vindicate' " his or her statutory cause in an " 'arbitral forum,' " then, under general legal principles entirely independent of ERISA, the beneficiary

would have the right not to submit his or her claim to arbitration despite an explicit contractual agreement to the contrary. *See Shankle v. B-G Maint. Mgmt of Colorado, Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)). In this case, therefore, the plan's provision creating a presumption that Mr. Bond would bear half the costs of arbitration might, at worst, have rendered the provision mandating arbitration as a pre-requisite for civil litigation unenforceable under the Federal Arbitration Act. *See Shankle*, 163 F.3d at 1234-35. But the fact that Mr. Bond might have had a right to initiate a civil action directly does not imply that ERISA prohibits an employee benefit plan from requiring him to pay for arbitration if he in fact decides to avail himself of an arbitral forum. If Congress wants employers to bear the cost of arbitration arising from § 1133 claims, it can presumably pass legislation to that effect. It has not chosen to do so.

## II.

Mr. Bond also relies on regulations relevant to § 1133 that apply to all claims filed on or after January 1, 2002. *See* 29 C.F.R. § 2560.503-1(o)(1) (2001). Both parties, however, recognize that these regulations do not control Mr. Bond's claim because his claim was filed before they went into effect. Mr. Bond argues, nonetheless, that the new regulations clarify how we should interpret § 1133. The new regulation states that claims procedures may "not contain any provision ... that unduly inhibits or hampers the initiation provision or processing of claims for benefits" and further provides that "a provision or practice that requires payment of a fee or costs as a condition to making a claim or to appealing an adverse benefit determination would be considered to unduly inhibit the initiation and processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3) (2001). For reasons already adumbrated, I believe that the claims procedures referred to here are procedures that § 1133 requires a plan's fiduciary to provide, and thus the new regulation prohibits a plan from requiring beneficiaries to pay fees for obtaining review from a fiduciary.

It does not prohibit a plan from requiring beneficiaries to pay for arbitration after a fiduciary has reviewed a claim.

In any case, I agree with the district court's holding that in Mr. Bond's case, while the plan creates a presumption that the fees will be split equally, the split is not mandated. Rather, the plan gives the arbitrator the discretion to determine an appropriate allocation of fees. Mr. Bond, thus, would not have a claim even if the new regulation clarified the interpretation of § 1133 and prohibited a plan from requiring beneficiaries to pay arbitration fees.

III.

In sum, I think that Twin City Carpenters Pension Fund completely satisfied § 1133 by providing Mr. Bond with a "full and fair review" of his claim. I would hold, moreover, that the statute has no application to the cost-sharing provisions of the plan and thus those provisions did not violate ERISA. I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.