811 A.2d 331

**MCR OF AMERICA, INC., d/b/a Mortgage Credit Reports Inc.**

v.

**J. William GREENE.**

**No. 1274, Sept. Term 2000.**

Court of Special Appeals of Maryland.

Nov. 26, 2002.

Peter T. McDowell of Timonium, (Edward L. Blanton, Jr. of Towson, on the brief), for appellant.

Karen D. Amos, Ellicott City, for appellee.

Argued before MURPHY, C.J., KRAUSER, and STUART R. BERGER (Specially assigned), JJ.

KRAUSER, Judge.

We are asked to determine whether an arbitrator can impose sanctions on an attorney, representing a party to the arbitration, for misconduct. In this case, the arbitrator sanctioned the offending attorney [1] by making him jointly responsible with his client for a portion of the award of fees and costs his client was ordered to pay, as the non-prevailing party in the proceeding below. In deciding this issue and others presented by the parties, we shall take this opportunity to illumine the role and powers of the arbitrator under Maryland law.

This case arose from an employment dispute. Appellant, MCR of America, Inc., ("MCR"),[2] fired its marketing director,

---

1. We note that appellate counsel is not the counsel against whom the arbitrator awarded arbitration and legal fees and costs.

2. MCR does business as Mortgage Credit Reports of America, Inc.

appellee J. William Greene, for purportedly violating his employment contract. The propriety of that termination was ultimately submitted to arbitration.

Following what were apparently unnecessarily contentious proceedings, the arbitrator found that MCR had not breached its agreement with Greene by terminating his employment. She then ordered Greene, as the non-prevailing party on the principal issue before her, to reimburse MCR for all arbitration "fees and expenses" as well as attorney's fees incurred by MCR in defending against Greene's breach of contract claim. But MCR's victory was not complete nor Greene's defeat total. On his claim for unpaid wages, the arbitrator ordered MCR to pay Greene $2,676.92.

Then turning to Greene's counsel, whose "vexatious conduct" the arbitrator believed had unnecessarily complicated and prolonged the proceedings, she declared that he was "jointly responsible" with his client for a portion of the arbitration and legal fees to be paid to MCR. While the award of arbitration fees and expenses was upheld by the Circuit Court for Baltimore County, the award of legal fees was not. Cross-appeals to this Court followed.

Before this Court, MCR challenges the circuit court's vacation of the arbitrator's award of attorney's fees while Greene contests the court's affirmance of the arbitrator's award of fees and costs to MCR. Specifically, MCR presents two issues, which can be restated as one:

I. Whether the circuit court erred in vacating the arbitrator's award of attorney's fees?

On cross-appeal, Greene presents the following issues, which we have set forth below largely as they appear in his brief:

I. Whether the circuit court erred in confirming all fees and costs awarded pursuant to MCR's motion for sanctions.

A. Whether the arbitrator was without authority to consider an award of sanctions.

B. Whether the award of fees/expenses based upon documents provided by MCR to the arbitrator ex parte following the close of the hearing constitutes misconduct, bias, prejudice, and denial of due process such that the award must be vacated.

C. Whether the arbitrator was without authority to extend personal liability of the award to Greene's counsel who was not a party to the arbitration or to the agreement requiring the parties to submit to arbitration.

II. Whether the circuit court erred in refusing to vacate the arbitrator's decision and award.

For the reasons that follow, we shall affirm the circuit court's vacation of the arbitrator's award of attorney's fees but reverse its confirmance of the arbitrator's award of fees and expenses. In all other respects, we shall affirm the judgment of the circuit court.

## BACKGROUND

MCR is engaged in the credit reporting business. It provides credit and investigative reports to businesses in the home mortgage industry. Hoping to expand that business, MCR hired Greene to be its marketing director and executive vice-president.

The terms of Greene's employment were memorialized in a written agreement between the parties. Paragraph 6 of that agreement, entitled "Breach," states that the parties shall "by mutual agreement, develop written performance criteria including achievable goals regarding steps for the growth, expansion or diversification of the Corporation." Under that paragraph, if Greene fails "to render services or accomplish the criteria or goals" agreed to by the parties or "to perform any material covenant or condition" of the agreement, MCR may terminate the agreement. Paragraph 8 of the agreement, entitled "Termination," permits MCR to terminate Greene's employment "for justifiable cause" which includes "any disclosure by [Greene] to any person, firm or corporation . . . of any confidential information."

Both paragraphs contain arbitration provisions. Paragraph 6(b) provides:

> In the event of a dispute between the Corporation and the Employee as to a termination of this agreement, such dispute shall be submitted to arbitration under the rules of the American Arbitration Association, and the decision of the arbitrator shall be final and binding upon all parties. The fees and expenses of any such action shall be bourne solely by the party against whom the decision is rendered.

And Paragraph 8(b) provides:

> In the event of a dispute between the board of directors and the employee as to the existence of justifiable cause, such dispute shall be submitted to arbitration under the rules of the American Arbitration Association, and the decision of the arbitrator shall be final and binding upon all parties. The fees and expenses of any such action shall be bourne solely by the party against whom the decision is rendered.

In sum, Paragraph 6(b) requires that disputes "as to a termination" be arbitrated while Paragraph 8(b) requires that disputes "as to the existence of justifiable cause" be arbitrated. Both arbitration provisions state that "the fees and expenses of any such action shall be bourne solely by the party against whom the decision is rendered." That language was the basis upon which the arbitrator awarded MCR fees and costs.

Greene began working for MCR on May 15, 1996. But over the next five months, MCR's business did not grow as planned. Consequently, among other cost-cutting measures, MCR reduced Greene's salary by fifty-three percent. That reduction, MCR informed Greene, was to "bring [his] salary down" to the level of the salaries of other employees, which had been reduced because of MCR's economic difficulties. Unfortunately, Greene discussed his salary reduction with the owner of a credit reporting company that MCR was attempting to purchase. The disclosure of that information, MCR claims, created questions as to its financial viability.

After learning of that disclosure, MCR terminated Greene's employment. In a letter to Greene, dated October 25, 1996, MCR informed Greene that he was being terminated for "failure to perform" under paragraph 6 of the agreement and for "justifiable cause" under Paragraph 8(a) of that agreement for disclosing confidential information about his salary reduction to a competitor.[3]

On June 8, 1997, Greene filed a complaint in the Circuit Court for Howard County against MCR, alleging breach of contract and a violation of Labor and Employment ("LE") § 3 507.1 of the Maryland Code Annotated (1991, 1999 Repl.Vol.).[4] In that complaint, he "sought recovery of the unpaid portion of his salary, as well as monetary reimbursement of lost fringe benefits, attorney's fees and costs." In response, MCR filed a petition to compel arbitration and to stay the action pending before the circuit court, pursuant to Paragraphs 6(b) and 8(b) of Greene's employment agreement. The circuit court denied that petition, whereupon MCR noted an appeal to this Court.

After argument, this Court issued an unreported opinion.[5] In that opinion, we observed that the parties' employment agreement "mandates arbitration for disputes regarding 'termination of [the] agreement' and the 'existence of justifiable

---

**3.** The agreement defines "confidential information" as "any information which in any way relates to any of the Corporation's . . . earning's data or information related to [Greene's] work."

**4.** LE 3–507.1. provides:

 (a) *In General.*–Notwithstanding any remedy available under § 3–507 of this subtitle, if an employer fails to pay an employee in accordance with § 3–502 or § 3–505 of this subtitle, after two weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages.

 (b) *Award and costs.*–If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

**5.** See *MCR of America d/b/a Mortgage Credit Reports, Inc. v. J. William Greene,* No. 135, Sept. Term 1998.

cause' for termination." We declared that because Greene's "claims for monetary damages are inextricably linked to his termination," the subject matter of the parties' dispute was within the scope of the arbitration provisions of their agreement. Accordingly, we reversed the circuit court's order and remanded this case to that court with instructions to grant MCR's petition to compel arbitration.

Thereafter, Greene filed a Statement of Claim with the American Arbitration Association, seeking, among other things, unpaid wages and damages for breach of contract. Greene also sought "reasonable attorney's fees ... pre-judgment interest and the costs of [the] action, including the submission fee and all hearing fees." In reply, MCR filed an answer and a counterclaim for fraudulent misrepresentation, alleging that Greene misrepresented his "qualifications, abilities, and commitment" to MCR. As Greene did, MCR requested "the costs of the arbitration and all proceedings and attorneys' fees incident thereto."

In mid-July of 1999, a hearing was held before an arbitrator provided by the American Arbitration Association ("AAA"). Following that hearing, the AAA case manager, by letter dated July 20, 1999, informed the parties that "[p]ost-hearing briefs [were] to be filed on or before August 13, 1999." The letter further stated that "[u]pon the filing of final briefs ... the arbitrator [would] declare the hearings closed."

On August 20, 1999, one week after the letter's August 13, 1999 deadline, MCR filed a "Motion for Sanctions" with the Arbitrator. That motion claimed that "throughout the presentation of his case and the cross examination of Claimant's witnesses" Greene's attorney, among other things, "was argumentative in the extreme, constantly interfering with the examination of witnesses, and making repetitious arguments unrelated to the objection he was making" during discovery and the presentation of his case. His conduct and lack of preparation, the motion alleged, had "unduly prolonged" discovery and the arbitration hearing. It therefore requested reimbursement for counsel fees and other fees and costs it had

incurred as a result of his behavior. No bills were submitted with that motion. Later, however, MCR sent copies of its legal bills to the arbitrator but not, apparently, to Greene-at least not until after the arbitrator had rendered her decision.

That decision awarded Greene $2,676.92 in unpaid wages pursuant to LE § 3–507.1 but it rejected both Greene's breach of contract claim and MCR's fraudulent misrepresentation counterclaim. It further awarded MCR "its reasonable arbitration fees, including attorney's fees and expenses incurred by MCR to defend Greene's contract actions."

After finding that MCR's total attorney's fees in the arbitration proceedings were $64,640.00 and determining that $45,000.00 of those fees were expended by MCR in defending Greene's contract claim, the decision declared that Greene "shall pay or reimburse to MCR: (i) American Arbitration Association administrative fees and expenses . . ., (ii) Arbitrator's fees and expenses, (iii) MCR's attorney's fees in the amount of $45,000, [and] (iv) MCR's expenses in the amount of 8,479.66."

Then, noting that "[t]hroughout the ensuing arbitration, Greene's counsel . . . was variously obstructive, uncivil, pedantic, disrespectful of witnesses and his colleagues at the bar, and disparaging of the process of arbitration" and that his "redundant objections (to relevancy) and his vexatious pattern of examination of witnesses wasted considerable time and multiplied the costs of these proceedings," the arbitrator ordered Greene and his counsel to pay MCR, "$8,500.00 of the attorney's fees incurred by and awarded to MCR, and . . . $8,500.00 of the Arbitrator's fees incurred by and owed to the Arbitrator." In awarding these amounts to MCR, the arbitrator stated that she was relying on the National Rules for the Resolution of Arbitration Disputes and "the Maryland State Bar Association Code of Civility, Rule 11 of the Federal Rules of Civil Procedure, and Maryland Rule 1–341, among other guidelines and authorities describing counsel's sanctionable conduct."

Challenging that decision, Greene filed a "Request for Modification of Award." In that request, Greene asserted that MCR's failure to send him copies of MCR's bills for attorneys' fees until after the arbitrator had issued her decision had denied him the opportunity, in violation of Rule 25 of the AAA Rules, to "examine such documents or other evidence or to lodge appropriate objections, if any." Had he been given that opportunity, appellant claims that he would have been able to object to the fees "on several grounds, including, but not limited to, the amount of time [MCR's] counsel actually billed on the case, the hourly rates charged by [MCR's] counsel, and the reasonableness of the same, the appropriateness of double billing for [MCR's] two attorneys, whether the bills represented actual bills submitted to [MCR], and the allocation of fees and expenses as determined by the Arbitrator, etc." He therefore requested that the award of attorneys fees and other fees and costs be vacated.

Denying that request, the arbitrator stated she would "not redetermine the merits of any claim already decided. . . ." She added, however, "because [Greene] apparently had not been timely provided with certain of [MCR's] submissions or fees calculations which accompanied the parties' post-hearing brief, the arbitrator would entertain a request for modification if necessary to correct a computational error that might appear to Claimant upon reviewing the [MCR's] submission." There is no indication in the record that Greene responded to that offer.

Finally, because Greene's request for modification "identifie[d] no clerical, typographical, technical or computational error in the arbitrator's calculation of certain attorney's fees reasonably incurred by and awarded to MCR" and "[b]ecause [Greene] elected not to question the related computations (such as attorney hours spent on the case, hourly rates, double-billing, actual fee bills, and/or allocation of fees to particular claims)" in his request for modification, the arbitrator declared that "no modification shall follow pursuant to [AAA] Rule 35." [6]

---

**6.** AAA Rule 35 provides in part:

After his request for modification was denied by the arbitrator, Greene filed a "Motion to Vacate Arbitrator's Award" in the Circuit Court for Baltimore County. In ruling on that motion, the circuit court found no "support [for] a finding that the award was procured by fraud, corruption, or undue means," and declared that Greene had "supplied the Court with no facts or evidence to support a finding of evident partiality by the arbitrator." It further found that there was "no contractual or statutory basis for the awarding of attorney [sic] fees" to MCR. Maryland Rule 1–341, the court explained, does not apply "to actions outside State courts, such as arbitration hearings." Moreover, even if it did apply, there was "no explicit finding by the arbitrator that there was an abuse of the judicial process by filing or defending actions and proceedings without substantial justification or in bad faith," as that rule requires. The court then vacated that part of the arbitrator's award granting attorney's fees to MCR but then, notwithstanding its findings, confirmed the award "[i]n all other respects, including all fees and costs awarded pursuant to the Motion for Sanctions."

Thereafter, the parties filed cross motions to alter or amend the judgment, which the circuit court denied. MCR then noted this appeal, whereupon Greene filed a cross-appeal.

## DISCUSSION

### I.

MCR contends that the circuit court erred in vacating the arbitrator's award of attorney's fees. Citing Maryland statutory and common law standards for vacating such an award, MCR claims that "Greene adduced not a scintilla of evidence of corruption, fraud, undue means or evident partiality by the Arbitrator, or mistake of law or fact" and that the circuit court

---

Within twenty (20) days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

made no finding that the arbitrator's award was based on a "completely irrational interpretation of the contract." Consequently, MCR claims, the court "had no authority to vacate the award" of attorney's fees under either Maryland's Uniform Arbitration Act ("Arbitration Act"), §§ 3–201 through 3–234 of the Courts & Judicial Proceedings Article ("CJP") of the Maryland Code Annotated (1973, 2002 Repl.Vol.), or Maryland common law.

But there are other grounds for vacating an arbitration award. The Arbitration Act also provides that an award shall be vacated if "[t]he arbitrators exceeded their powers." CJP § 3–224(b)(3). And that is what occurred here. In vacating the attorney's fee award, the circuit court found, and we believe correctly so, that there was no contractual or statutory basis upon which to make such an award and thus the arbitrator exceeded her powers in making that award.

The parties' agreement states only that "[t]he fees and expenses of any [arbitration] action shall be borne solely by the party against whom the decision is rendered." No mention is made of attorney's fees, and, under such circumstances, the Court of Appeals has declared, the power to award attorney's fees "will not be presumed." *Department of Health and Mental Hygiene v. Campbell,* 364 Md. 108, 124, 771 A.2d 1051 (2001). Moreover, the Arbitration Act plainly disfavors awarding such fees: it stresses that "[u]nless the arbitration agreement provides otherwise, the award may not include counsel fees." CJP § 3–221(b). Given the failure of the contract to expressly provide for the recovery of attorney's fees and the Arbitration Act's prohibition against an arbitral [7] award of attorney's fees in the absence of authorizing contractual language, the circuit court was correct in concluding that

---

**7.** The Act's disapproval of arbitral awards of attorney's fees does not necessarily extend to judicial awards of such fees. In *Blitz v. Beth Isaac Adas Israel Congregation,* 352 Md. 31, 44, 720 A.2d 912 (1998), the Court of Appeals held that, pursuant to CJP § 3–328(b), the circuit court did not err in awarding attorney's fees to the prevailing party of an arbitration proceeding, for prosecuting an action to confirm and enforce the arbitration award.

there was "no contractual or statutory basis for awarding attorney fees to ... MCR of America, Inc."

MCR's counters, however, that the parties' agreement must provide for attorney's fees because both sides requested an award of such fees in their pleadings. This argument is unpersuasive. Attorneys routinely request such fees in pleadings they file even when there is only the slightest chance that such fees will be awarded. And once one side has requested them, it is inevitable that the other side will follow suit. Such requests are made with Pavlovian consistency and hence should play no interpretive role.

But even if the award was in error, once the award is made, can it be vacated under the prevailing standard of review? MCR thinks not. Citing *O–S Corp. v. Samuel A. Kroll, Inc.*, 29 Md.App. 406, 348 A.2d 870 (1975), MCR claims that once the arbitrator has awarded attorney's fees, as occurred here, that award cannot be vacated, even if arbitrary, unless there is a finding that the award was based on a "completely irrational" interpretation of the arbitration contract. Because no such finding was made by the court below, MCR insists that the award of attorney's fees must stand.

That claim, however, collapses upon careful inspection: it is founded upon both a misconstruction of *O–S Corp.* and a misapplication of the "completely irrational" standard. The "completely irrational" standard may be an appropriate standard for reviewing arbitral interpretations of substantive provisions of a contract, but it is not an appropriate standard for reviewing an arbitrator's definition of his or her own powers, particularly when that definition is purportedly at odds with the underlying arbitration contract and disfavored by the Arbitration Act. Nor does *O–S Corp.* suggest otherwise.

*O–S Corp.* involved a construction dispute that was submitted to arbitration under the Arbitration Act. In that case, this Court held that, "when reviewing the fruits of an arbitrator's award, a judge may withhold only such as were tainted by improbity *or* based on a completely irrational interpretation of the contract." *Id.* at 408–09, 348 A.2d 870. Hence, the

"completely irrational" standard was born, a standard, we note, that has not, to date, been adopted by the Court of Appeals.[8]

The arbitration award in *O–S Corp.* was an award for wages, fees, and overhead costs, allegedly owed under a construction contract to a building contractor. The issue in that case was not the arbitrator's power to make the award at issue, as in this case, but whether the arbitrator's award was based on a "completely irrational" interpretation of the construction contract. The two cases thus present different issues and, we believe, require different results. Indeed, it is one thing to grant the arbitrator broader discretion than a court of law has to interpret a contract, even though it is less reviewable, but quite another to invest the arbitrator with the same discretion when it comes to defining its own powers.

The "completely irrational" standard was not reviewed by the Court of Appeals until *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates,* 313 Md. 652, 547 A.2d 1048 (1988). In that case, Barclay, a developer, entered into a contract with Messersmith, a drywall contractor, to do the drywall and metal stud work for a project that Barclay was constructing. *Id.* at 655, 547 A.2d 1048. A dispute arose, and Messersmith filed a petition to arbitrate the matter.

Claiming "that no written agreement to arbitrate existed," Barclay and other interested parties challenged the jurisdiction of the arbitrators. *Id.* at 656, 547 A.2d 1048. Nonetheless, the arbitrators determined that they did in fact have

---

**8.** In *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates,* 313 Md. 652, 659, 547 A.2d 1048 (1988), the Court of Appeals noted that it had never approved "the *O–S Corp.* case and the 'completely irrational' standard discussed therein." It cautioned that "the completely irrational standard of review may or may not represent the proper approach when the arbitral jurisdiction is unquestioned." *Id.* On the other hand, the Court has never rejected that standard. Until it does, we shall assume its continued vitality in Maryland. *See Snyder v. Berliner Construction Co., Inc.,* 79 Md.App. 29, 37, 555 A.2d 523 (1989)(stating that the "completely irrational" standard applies to an arbitrator's construction of the parties' *"substantive contractual provisions "*).

jurisdiction over the case and entered an award in favor of Messersmith. *Id.* at 657, 547 A.2d 1048. In response, Barclay filed a petition to vacate the award "on the basis that it had never agreed to submit to arbitration." *Id.* at 657, 547 A.2d 1048.

Denying that petition, the circuit court held that the arbitrators' decision was not completely irrational, and therefore that it had no grounds on which to vacate the award under CJP § 3–244(b)(5). That section states that a court shall vacate an arbitration award if "[t]here was no arbitration agreement as described in § 3–206, the issue was not adversely determined in proceedings under § 3–208, and the party did not participate in the arbitration hearing without raising the objection."

Ultimately, this Court reversed that decision, reasoning that, "[b]ecause an arbitrator has no power to act in the absence of an agreement to arbitrate, the 'completely irrational' standard of review used for reviewing arbitration awards on the merits is totally inappropriate." *Barclay Townhouse Associates v. Stephen L. Messersmith, Inc.,* 67 Md.App. 493, 497, 508 A.2d 507 (1986). The Court of Appeals agreed. It declared "that the proper procedure for reviewing cases arising under § 3–224(b)(5) is to conduct a *de novo* review." [9] *Id.* at 664, 508 A.2d 507. The Court reasoned that while a deferential standard of review "is appropriate [] where the parties indisputably agree to submit to arbitration," if "the arbitrator's very authority to adjudicate the dispute is chal-

---

**9.** The Court explained that under a *de novo* review, a court shall, "[a]fter receiving the evidence ... decide by a preponderance of the evidence whether an agreement to arbitrate exists, giving no weight to the view expressed by the arbitration panel." *Id.* at 664, 555 A.2d 523. "If an agreement to arbitrate is found to exist," the Court explained, "judgment may be entered on the arbitral award. Otherwise, the award shall be vacated." *Id.* The Court also stated that "[w]e do not suggest by the use of the term '*de novo* review' that the court must of necessity hear live testimony. It may be that evidence on the issue in a particular case is limited to documents and agreed statements of facts by the parties. Clearly, however, evidence which requires the court to decide an issue of witness credibility must be presented anew to the court for that credibility determination." *Id.* at n. 4.

lenged, such obedience to the arbitrators' assertion of jurisdiction is clearly inapt." *Id.* at 659–60, 508 A.2d 507.

This same reasoning applies to specific issues before the arbitrator, particularly where the arbitrator's definition of its powers is at odds with the arbitration contract and disfavored by the Arbitration Act, as here. Under such circumstances, there is no reason to distinguish between cases, in general, and issues, in particular, for purposes of review. We therefore shall review *de novo* the question of whether the arbitrator had the right to award attorney's fees to MCR.

■ The National Rules for Arbitration Disputes ("AAA Rules") were incorporated by the parties into their agreement. AAA Rule 34(e) states that an "arbitrator shall have the authority to provide for the reimbursement of representative fees, in whole or in part, as part of the remedy, in accordance with applicable law." The "applicable law" here, however, is the Arbitration Act, and, as pointed out, that act disfavors the recovery of counsel fees "[u]nless the arbitration agreement provides otherwise." CJP § 3–221(b).

Moreover, the parties' employment agreement provides that "fees and expenses" of arbitration "shall be bourne solely by the party against whom the decision is rendered," but, as noted earlier, no mention is made of attorney's fees. And there is no reason to infer from that language that it encompasses anything more than the fees and expenses of the arbitrator. As the language of the parties' agreement to arbitrate does not provide for the recovery of attorney's fees, we conclude that the circuit court did not err in vacating that award.

Also, we are not unmindful of the growing concern over the use of arbitration contracts to compel consumers and prospective employees to waive, in effect, important constitutional and statutory rights or be denied, in the case of consumers, needed goods and services, and, in the case of prospective employees, desirable employment. *See, e.g.,* Senator Russell D. Feingold, *Mandatory Arbitration: What Process Is Due?,* 39 HARV. J. ON LEGIS., 281 (2002); Larry J. Pittman, *The Federal Arbitra-*

*tion Act: The Supreme Court's Erroneous Statutory Interpretation, Stare Decisis, and a Proposal for Change,* 53 ALA. L.REV., 789 (2002). This concern is not unfounded. The use of arbitration to resolve employment disputes and consumer complaints is growing at a startling pace.[10] What was once considered just a voluntary alternative means of resolving disputes quickly and inexpensively, has the potential, as one commentator has observed, to become "a tool for the powerful to exert authority over the less powerful." Feingold, *supra* at 284. To deal with that concern, some states have enacted statutes prohibiting the use of arbitration to resolve disputes arising out of employment and consumer contracts. *Id.* at 284–85, 508 A.2d 507. The validity of such statutes of course is now in question given the continued vitality of the Supreme Court's decision in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). *See Circuit City Stores, Inc. v. Saint Clair Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In *Southland,* the Supreme Court held that the FAA preempts any state law that limits the availability of arbitration. Nonetheless, the concern remains.[11]

And it is that concern which renders us reluctant to find authority for an arbitrator to award attorney's fees when none has expressly be given by contract or granted by statute.

---

**10.** The number of arbitration cases filed with the American Arbitration Association jumped by forty-two percent in 2000, alone. Nearly 200,000 arbitration cases were filed that year with the AAA. This represented the sixth consecutive year in which there was a record increase in arbitration cases. Moreover, almost one-quarter of the 1.7 million cases in the AAA's seventy-five year history have been filed within the last five years. American Arbitration Association, Proud Past, Bold Future: 2000 Annual Report 5, available at (*http://www.adr. org/upload/LIVESITE/About/annual_reports/anual* report_2000.pdf).

**11.** Given the adhesive nature of many employment and consumer contracts, a judicial standard of review broader than the one currently employed by this Court might be more appropriate when such contracts are involved. But that issue we leave to the Legislature to consider, or to the Court of Appeals, should certiorari be sought and granted in this matter.

Indeed, it is not hard to foresee how provisions awarding attorney's fees to the prevailing party would make the risks of arbitration simply too great for any consumer or employee to seriously consider it. Unfortunately, such provisions have the potential for transforming what was to be an inexpensive and accessible means of seeking redress into a formidable obstacle to seeking any relief at all.[12]

## Cross Appeal

### I.

Greene contends that the circuit court erred in confirming the arbitrator's award of, in the words of that court, "all fees and costs pursuant to MCR's Motion for Sanctions." In making that award, the arbitrator principally relied on Rule 11 of the Federal Rules of Civil Procedure, the AAA Rules, and Maryland Rule 1–341. That reliance, according to Greene, was misplaced and, for the reasons that follow, we agree.

Before we address those reasons, however, we must first clarify the nature of the court's ruling and thus the issue now before us. The "fees and costs" of which the court speaks, are, we assume, the arbitration fees and costs, owed by Greene alone, as the non-prevailing party, or owed by Greene and his attorney, as sanctions; they presumably do not include the legal fees owed by Greene and his attorney as sanctions. That is because when the circuit court vacated the general award of attorney's fees, which Greene alone was ordered to pay, it by implication vacated the award of attorney's fees,

---

**12.** In the recently reported *Bond v. Twin Cities Carpenters Pension Fund*, 307 F.3d 704 (8th Cir.2002), the United States Court of Appeals for the Eighth Circuit expressed a similar apprehension as to an employment pension plan that required that employees who seek "a benefits determination" under its "mandatory arbitration scheme" to "bear half of the costs of arbitration, unless the arbitrator alters this presumption in the arbitrator's decision." *Id.* at 705. Holding that such a requirement denied claimant-employees "a reasonable opportunity for full and fair review, as required by 29 U.S.C. § 1133," that court observed that "[t]he threat of having to pay the arbitrator's expenses no doubt discourages the pursuit of many legitimate claims by those who cannot afford such costs." *Id.* at 706.

which Greene and his attorney were ordered to pay as sanctions. That sum, $8,500, was not in addition to the general award of $45,000 in attorney's fees that Greene was to pay MCR, as the non-prevailing party, but a portion of it to be paid by Greene and his attorney, as sanctions. If the general award is vacated, it follows that so is that portion of it that was to be paid as sanctions by Greene and his attorney. And indeed there is no other way to read this language without rendering the circuit court's decision internally inconsistent.

In support of his claim that the court erred in not vacating that award—which, as we just discussed, applies only to the portion of that award which still stands, namely, the arbitrator's fees and costs—Greene advances four arguments. First, he asserts that the arbitrator had no authority to award sanctions pursuant to Maryland Rule 1–341 because that rule applies only to court proceedings, and that even if the Rule applies to arbitration proceedings, the sanctions award should have been vacated because the arbitrator failed to make explicit findings of "bad faith" or lack of "substantial justification." Md. Rule 1–341. Second, Greene claims that, in awarding sanctions, the arbitrator should not have relied on Rule 11 of the Federal Rules of Civil Procedure because the federal rules did not apply to the arbitration proceeding. Third, Greene maintains that "the arbitrator was without authority to extend personal liability of the award to Greene's counsel who was not a party to the arbitration or to the agreement requiring the parties to submit to arbitration." And fourth, Greene claims that attorney's bills provided to the arbitrator *ex parte* and that the motion for sanctions, which was received by the arbitrator after the close of the hearings, constituted "misconduct, bias, prejudice, and [a] denial of due process such that the award must be vacated."

In determining whether the arbitrator had the authority to sanction Greene's counsel, we note that private arbitration "is a matter of contract," *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91 (1983), and that an "arbitrator [] derives his or her power from the arbitration

agreement itself." *Barclay Townhouse Associates,* 67 Md. App. at 497, 508 A.2d 507. Accordingly, "[a]n arbitration agreement cannot impose obligations on persons who are not a party to it and do not agree to its terms." *Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 579–80, 667 A.2d 649 (1995); *see also Hartford Accident & Indemnity Co. v. Scarlett Harbor Associates Limited,* 346 Md. 122, 127, 695 A.2d 153 (1997). And therefore, because Greene's counsel was neither a party to the arbitration agreement nor the arbitration proceedings themselves, the arbitrator had no authority to assess arbitration fees against him personally.

Although not precisely on point, the Court of Appeals' decision in *Curtis G. Testerman* Co., *supra,* lends support to this conclusion. There, the Court of Appeals addressed the issue of "[w]hether one who is neither a party to the arbitration agreement nor a signatory of the underlying contract can be bound by an arbitration award." *Testerman,* 340 Md. at 574, 667 A.2d 649. The Court found that "Testerman clearly signed the contract as an agent for a disclosed principal," and thus was "not bound by the arbitration clause in the contract as an agent." *Id.* at 577, 667 A.2d 649. "[T]he only way that Testerman [could have been] compelled to arbitrate," the Court continued, was "if an agreement to arbitrate exist[ed] between the Bucks and Testerman in his individual capacity." *Id.* at 578, 667 A.2d 649.

The Court's reasoning in *Testerman* is applicable here. Just as the arbitrator in *Testerman* had no jurisdiction over Curtis Testerman because he was not a party to the arbitration agreement, only the representative of a party, the arbitrator in this matter had no authority to make Greene's counsel, as a representative of Greene, responsible for any portion of its award, as sanctions or otherwise.

▬ But it is more than the weight of contrary case law that tempers our enthusiasm for approving the power of arbitrators to sanction counsel for misconduct. Our reluctance is born of a recognition that, under prevailing standards of judicial review, the arbitrator's power to sanction, once

established, will largely escape judicial review. While we review the judicial imposition of sanctions on an attorney under a clearly erroneous and an abuse of discretion standard, *Inlet Associates v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267–68, 596 A.2d 1049 (1991), we are constrained to review the arbitral imposition of the same sanctions under the narrower standard of the Arbitration Act. Under that act, we can review the imposition of sanctions by an arbitrator but only for mistake, CJP § 3–223(b)(1),(3), or for fraud, corruption, or the denial of due process, CJP § 3–224(b). We are therefore not inclined to accept a broadening of the powers of an arbitrator while our authority to review the exercise of those powers remains narrow. To hold otherwise would grant arbitrators greater power to sanction attorneys by awarding arbitration or attorney's fees than the courts presently enjoy, because the power of arbitrators to do so is less reviewable. That would be an unfortunate result, given that arbitrators are not judges and arbitrations are not trials. If arbitrators' powers are to be so expanded, it should be done expressly by rule or statute, not inferentially by this Court.

We further note that the three principal authorities relied upon by the arbitrator in awarding sanctions-Federal Rule 11, AAA Rules, and Maryland Rule 1–341-do not provide the basis for such an award here. Maryland Rule 1–341 only applies to conduct committed "in bad faith and without substantial justification" and in the course of "maintaining or defending [a] proceeding." Assuming that Rule 1–341 applies to the conduct at issue here, the arbitrator failed to make the "explicit findings of fact" required by that rule. *Zdravkovich v. Bell Atlantic–Tricon Leasing, Corp.*, 323 Md. 200, 592 A.2d 498 (1991). Having failed to do so, the arbitrator had no authority to impose sanctions.

Nor does Federal Rule 11 provide authority for the arbitrator's award of sanctions. It addresses conduct that is not at issue here, namely, the presentation to the court of "a pleading, written motion, or other paper" for an improper purpose or which has no evidentiary support or is not warranted by existing law or any reasonable extension thereof. FRCP

11(b). In this case, the arbitrator did not impose sanctions for any of those reasons. She did not find that Greene's conduct was "vexatious" because of any pleading, motion, or other writing that he had presented. Rather, she imposed sanctions because she found that "throughout the ensuing arbitration, [Greene's counsel] ... was variously obstructive, uncivil, pedantic, disrespectful of witnesses and his colleagues at the bar, and discouraging of the process of arbitration" and that his "objections (to relevance) and his vexatious pattern of examination of witnesses wasted considerable time and multiplied the costs of [the] proceedings." Thus, the arbitrator's award of sanctions was based upon the attorney's conduct during arbitration but had nothing to do with the "signing, filing, submitting, or later advocating a pleading, written motion or other paper." Accordingly, Federal Rule 11 provided no authority for the arbitrator's sanctions award. *See* FRCP 11, Notes of Advisory Committee on 1993 amendments (stating that "[t]he rule applies only to assertions contained in papers filed with or submitted to the court").

And finally, AAA Rule 34(d) states that an "arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in a court." That rule was incorporated into the parties' agreement. But it does not mention sanctions, and it is simply too vague and ambiguous for us to conclude that it granted the arbitrator the right to impose sanctions.

We conclude this portion of the opinion by returning to the language used by the circuit court in confirming the arbitrator's award of sanctions. In the words of that court, it confirmed "all fees and costs awarded pursuant to the Motion for Sanctions." For the reasons outlined earlier in this opinion, we believe the court was referring only to the "arbitration fees and costs" portion of the sanctions award and not the "legal fees and costs" portion of that award. But if it did intend to confirm the arbitrator's award of legal fees, that award cannot stand as it was made under circumstances that denied both Greene and his attorney due process of law.

It is undisputed that copies of MCR's legal bills were forwarded to the arbitrator, but not to Greene or his attorney, until after the arbitrator awarded MCR its legal fees based on those bills. MCR concedes that Greene was not provided with copies of its legal bills until the arbitrator had ruled on its motion, but it maintains that this was done inadvertently. MCR also maintains that the error was "promptly corrected . . . as soon as it was brought to [its attorneys'] attention." It further asserts that, in any event, Greene, upon receiving copies of these bills, had an opportunity to challenge them in his Request for Modification of Award, but chose not to do so.

A court may "set aside an [arbitration] award where 'the proceedings lacked fundamental fairness.'" *Parks v. Sombke*, 127 Md.App. 245, 254, 732 A.2d 907 (1999)(quoting *Chillum–Adelphi Volunteer Fire Dept. Inc., v. Button & Goode, Inc.*, 242 Md. 509, 517, 219 A.2d 801 (1966)). Moreover, "Constitutional due process is applicable to the assessment of attorney's fees for litigation misconduct." *Needle v. White, Mindel, Clarke and Hill*, 81 Md.App. 463, 480, 568 A.2d 856 (1990). "Fair notice and an opportunity for a hearing on the record should be provided." *Id.* These principles are no less applicable in private arbitration proceedings. *Blitz v. Beth Isaac Adas Israel Congregation*, 115 Md.App. 460, 475, 694 A.2d 107 (1997) (stating that a court may exercise its power to vacate an arbitration award when a "denial of due process has tainted the legitimacy of the award"), *rev'd on other grounds*, 352 Md. 31, 720 A.2d 912 (1998); *Kovacs v. Kovacs*, 98 Md.App. 289, 304–05, 633 A.2d 425 (1993)("[I]f arbitration proceedings do not conform to notions of basic fairness or due process, the court would be justified in refusing to confirm an award.")

Greene did file a "Request to Modify the Award." In that request, Greene argued, among other things, that he was not provided with an opportunity to examine and object to the bills. He then asserted that he could have objected to the bills on several grounds, "including, but not limited to, the amount of time [MCR's] counsel allegedly billed on the case,

the hourly rates charged by [MCR's] counsel and the reasonableness of same, the appropriateness of double billing for [MCR's] two attorneys, whether the bills represented actual bills submitted, and the allocation of fees and expenses as determined by the Arbitrator."

In disposing of that request, however, the arbitrator stated that she could not "redetermine the merits of any claim already decided." She further asserted that under Rule 35, she could only modify the award to correct "clerical, typographical, technical or computational errors." We further note that under the Arbitration Act, an arbitrator may modify an award only for clarification on the following three grounds:

 I. There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

 II. The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

 III. The award is imperfect in a matter of form, not affecting the merits of the controversy.

CJP § 3–222(c)(1) and § 3–223(b)(1)–(3).

Because of the narrow grounds upon which an arbitrator can modify an arbitration award, Greene did not have the opportunity to challenge the award in his "Request for Modification." As the arbitrator pointed out, he was limited to only addressing "computational errors." Having been initially denied the opportunity to oppose appellant's request for attorney's fees and then the opportunity to challenging the ensuing award of such fees, except for computational errors, Greene and his attorney, we conclude, were denied due process of law as to the award of attorney's fees as sanctions.

## II.

Greene contends that the arbitrator was "partial" and engaged in misconduct by "exceed[ing] her authority" and arbi-

trating his statutory wage claim and MCR's counterclaim for fraudulent misrepresentation. He further claims that several "critical findings of the arbitrator's Decision and Award were without any rational basis in law or fact" and "clearly rise to the level of gross mistake." And finally, he maintains that the arbitrator should have awarded him "fees and expenses" because he prevailed on two out of the three issues decided by the arbitrator.

 When alleging partiality, "[t]he moving party must prove facts sufficient to permit an inference that there was indeed partiality by an arbitrator." *Graceman v. Goldstein,* 93 Md.App. 658, 666, 613 A.2d 1049 (1992)(citing *Wyndham v. Haines,* 305 Md. 269, 279, 503 A.2d 719 (1986)). "A party asserting that error was committed by an arbitration panel bears the burden of showing, by the record, that the error occurred." *Kovacs,* 98 Md.App. at 303, 633 A.2d 425. "Mere allegations and arguments contesting the validity of an award, unsubstantiated by the record, are insufficient to meet that burden." *Id.* And the moving party's burden, we note, "is a heavy one." *Baltimore Teachers Union, American Federation of Teachers, Local 340, AFL CIO v. Mayor and City Council of Baltimore,* 108 Md.App. 167, 182, 671 A.2d 80 (1996). Moreover, " '[a] mere error in the laws or failure on the part of the arbitrators to understand or apply the law will not justify judicial intervention, and the courts' function in confirming or vacating a commercial award is severely limited.' " *Southern Maryland Hosp. Center v. Edward M. Crough, Inc.,* 48 Md.App. 401, 407, 427 A.2d 1051 (1981)(quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1127 (3rd Cir.1969)). A court "shall not vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief." CJP § 3–224(c). Unless an award is made "in manifest disregard of the law" it will not be disturbed, as "[t]he goal in arbitration is to make an arbitration award the end, rather than the commencement, of litigation." *Birkey Design Group, Inc. v. Egle Nursing Home, Inc.,* 113 Md.App. 261, 269, 687 A.2d 256 (1997).

With respect to Greene's contention that the statutory wage claim was not arbitrable, we note that this Court has previously decided that issue in the first appeal of this case. We decline to revisit it under the doctrine of the law of the case. The "law of the case refers to the principle that issues once decided in a case that recur in later stages of the same case are not to be redetermined." *Wiggins v. State,* 90 Md.App. 549, 557 n. 3, 602 A.2d 212 (1992). We decided that Greene's statutory wage claim was arbitrable in *MCR of America d/b/a Mortgage Credit Reports, Inc. v. J. William Greene,* No. 135, Sept. Term 1998. In that appeal, we reviewed the circuit court's denial of a motion to compel arbitration. In this appeal, we are reviewing the circuit court's partial denial of a motion to vacate the arbitration award. Thus, this is a "later stage[] of the same case," and we shall not redetermine the issue. Greene's statutory wage claim was arbitrable.

Greene also contends that the arbitrator exceeded her authority in deciding MCR's counterclaim, and that in doing so, "demonstrat[ed] her partiality and misconduct which tainted the entire proceedings." Greene's argument is curious, because the arbitrator found in his favor on the counterclaim. We shall nonetheless consider the issue.

One of the two arbitration provisions of the parties' agreement is Paragraph 6 of that agreement. It provides that the parties are to develop jointly for Greene "written performance criteria including *achievable goals* regarding steps for the growth, expansion or diversification" of MCR. (Emphasis added). But it warns that Greene's failure to achieve the performance criteria developed, or his failure to "perform any material covenant or condition" of the agreement, unless "by reason of illness, injury or accident ... shall be deemed a default" under the agreement. According to Paragraph 6, following a waiting period, MCR is entitled to "terminate [the] Agreement" if Greene has not remedied the default.

Paragraph 6 provides that if a dispute arises "as to the termination of [the] agreement, such dispute shall be submitted to arbitration." In other words, any dispute over termi-

nation of the agreement for Greene's failure to achieve performance goals or "perform any material covenant or condition" of the agreement is arbitrable.

▉ MCR's counterclaim for fraudulent misrepresentation was based on Greene's alleged misrepresentations during employment negotiations as to his "qualifications, abilities, and commitment" to MCR. These claims are intertwined with Paragraph 6 of the parties' employment agreement. The arbitration clause in Paragraph 6 provides that a dispute over termination of the agreement shall be resolved in arbitration. The agreement could be terminated for Greene's failure to achieve performance goals or "perform any material covenant or condition" of the agreement. That the parties were to establish performance goals by mutual agreement and in "good faith" was certainly a "material covenant or condition" of the agreement, and any alleged misrepresentation by Greene as to his qualifications and abilities necessarily implicates his obligation to negotiate in good faith with MCR in setting performance goals. Thus, MCR's counterclaim was arbitrable.

Greene contends that "critical findings of the arbitrator's Decision and Award were without any rational basis in law or fact" and "clearly rise to the level of gross mistake." Specifically, he attacks the arbitrator's conclusion that sufficient "default notice was given to Greene," alleging that the evidence upon which she based that finding was insufficient. He also claims that the arbitrator "illogically" found that Greene's disclosure of his salary reduction violated Paragraph 7 of the parties' agreement. He further asserts that if that disclosure occurred, it was a result of "MCR's breach of the Agreement by fraudulently seeking to invoke paragraph 7 of the agreement based on its false assertions of company-wide salary reductions." He argues that "[i]n light of MCR's fraudulent conduct, MCR is estopped from invoking the provisions of paragraph 8 to its benefit." Finally, Greene asserts that the arbitrator "lost all sense of neutrality when she accepted MCR's late filing of a Motion for Sanctions and received, *ex parte*, bills supporting the motion."

As we have previously addressed Greene's assertions as to the late and *ex parte* submission of documents, we need not do so now. Greene's remaining arguments require us to review the merits of the arbitration award. That, we generally shall not do. *International Association of Fire-fighters, Local 1619 v. Prince Georges's County,* 74 Md.App. 438, 444, 538 A.2d 329 (1988)("Courts generally refuse to review arbitration awards on the merits...."). "[A] mere error in the laws or failure on the part of the arbitrators to understand or apply the law will not justify judicial intervention." *Southern Maryland Hosp. Center,* 48 Md.App. 401, 407, 427 A.2d 1051 (1981). Moreover, "[n]ot only is an arbitrator's fact finding and contract interpretation accorded great deference, but its interpretation of the law is accorded deference as well." *Upshur Coals Corp. v. United Mine Workers of America,* 933 F.2d 225, 229 (4th Cir.1991). "The interpretation of arbitrators must not be disturbed as long as they are not in 'manifest disregard' of the law...." *Southern Maryland Hosp. Center,* 48 Md.App. at 407, 427 A.2d 1051 (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3rd Cir.1969)). " 'Manifest disregard' " of the law is " 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.' " *Baltimore Teachers Union,* 108 Md.App. at 180, 671 A.2d 80 (quoting *Board of Educ. v. Prince George's County Educators' Ass'n.,* 309 Md. 85, 102, 522 A.2d 931 (1987)). *See also Upshur Coals Corp.,* 933 F.2d at 229 (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Limited,* 293 F.2d 796, 801 (9th Cir.1961)). It occurs " 'when arbitrators understand and correctly state the law, but proceed to disregard the same.' " *San Martine Compania De Navegacion, S.A.,* 293 F.2d at 801. Our review of the arbitrator's decision reveals no such disregard of the law.

We also find unpersuasive Greene's contention that the arbitrator should have awarded him "fees and expenses" because he prevailed in two of the three issues before the arbitrator. The arbitration provisions in the parties' agreement state that "fees and expenses ... shall be bourne solely by the party against whom the decision is rendered."

Pursuant to the parties' agreement, the arbitrator was authorized to award costs to the prevailing party. But here there is an issue as to who actually was the "prevailing" party. Greene maintains that, because the decision was rendered in his favor on two of the three issues before the arbitrator, he was entitled to "fees." But he points out that he "received no award and MCR received an award constituting approximately 70% of its attorney's fees."

It is unclear, however, whether Greene contends that, since the arbitrator decided two issues in his favor, he should have been awarded "fees" with respect to those issues, or whether Greene is claiming that since he prevailed on two out of three issues, he was entitled to an award of "fees" and MCR was not. Either way, we find no merit to Greene's position.

To resolve this question, we return to the language of the parties' agreement. The agreement states that "fees and expenses ... shall be bourne solely by the party against whom the decision is rendered." It impliedly leaves to the arbitrator's discretion as to which party prevailed. In this instance, the arbitrator apparently concluded, with some justification, that the principal issue before her was Greene's breach of contract claim and that most of the time, money, and energy of the parties was spent in litigating that issue. Indeed, the validity of Greene's back wages claim was conceded by MCR before the proceedings began. We see no reason to disturb the arbitrator's conclusion as to this issue.

**JUDGMENT VACATING ARBITRATOR'S AWARD OF ATTORNEY'S FEES IS AFFIRMED.**

**JUDGMENT CONFIRMING ARBITRATOR'S AWARD OF SANCTIONS AGAINST GREENE AND GREENE'S COUNSEL IS REVERSED.**

**COSTS TO BE PAID BY APPELLANT.**

Concurring Opinion by MURPHY, Chief Judge.

While I concur in the judgment, I am concerned about parties to an arbitration proceeding conducted pursuant to an

agreement that does not expressly authorize the arbitrator to impose sanctions for conduct that a court could impose under Maryland Rule 1–341. Agreements to arbitrate are favored because all parties to a dispute can benefit from a properly conducted arbitration proceeding. *Blitz v. Beth Isaac,* 352 Md. 31, 44 n. 13, 720 A.2d 912 (1998). Rambo tactics, however, are just as out of place in an arbitration proceeding as they are in a judicial proceeding.

The Court of Appeals has made it clear that the Maryland Lawyers' Rules of Professional Conduct (MLRPC)have "the force of law," *Post v. Bregman,* 349 Md. 142, 164, 707 A.2d 806 (1998). I am therefore persuaded that, when the arbitration agreement does not authorize the arbitrator to impose sanctions on a lawyer who is "throughout the . . . arbitration, . . . obstructive, discouraging of the process of arbitration, [and whose] objections . . . and . . . examination of witnesses wasted considerable time and multiplied the costs of [the] proceedings," Maryland law entitles the party who has been victimized by such misbehavior to assert a separate civil action, against the offending party and/or the attorney for the offending party, in order to recoup reasonable—but needlessly incurred—costs and counsel fees.